UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

No. 04-CV-12215-DPW

_____

MONTE CARLO CRUISE CONCESSIONS, INC.
Defendant-Appellant

v.

DONALD R. LASSMAN, CHAPTER 7 TRUSTEE
FISHERMAN'S WHARF EXCURSIONS, LLC
Plaintiff-Appellee

_____

On Appeal from the United States Bankruptcy Court
District of Massachusetts

_____

BRIEF OF DONALD R. LASSMAN, CHAPTER 7 TRUSTEE

_____

Stephen M. Sheehy
Stephen M. Sheehy, P.C.
BBO No. 457150
460 Totten Pond Road
Waltham MA 02451
781-466-8999
sms@smsheehylaw.com

## TABLE OF CONTENTS

| | | |
|---|---|---|
| **I.** | **Jurisdictional Statement** | 1 |
| **II.** | **Statement of the Issues On Cross-Appeal** | 2 |
| **III.** | **Statement of the Issues on Monte Carlo's Appeal** | 2 |
| **IV.** | **Statement of the Case** | 3 |
| | **Prior Proceedings** | 3 |
| | **Statement of Facts** | 5 |
| **IV.** | **Argument-Cross-Appeal** | 6 |
| | **Standard for review** | 6 |
| **1.** | **The Trustee was entitled to prejudgment interest.** | 7 |
| **2.** | **All Funds in Addition to the First Month's Fees Were Property of the Estate and Subject to Turnover.** | 8 |
| **3.** | **Monte Carlo had no right to setoff or recoup any funds in addition to the first month's fees.** | 9 |
| **4.** | **Even if Monte Carlo was entitled to recoupment or setoff, it was only entitled to a credit for the period of actual use of the vessel.** | 12 |
| | **Argument-Monte Carlo's Appeal** | 13 |
| **1.** | **The Bankruptcy Judge did not Abuse his Discretion when he Dismissed the Appeal and Denied the Motion for Reconsideration.** | 13 |
| **2.** | **There was no excusable neglect.** | 14 |
| **3.** | **Monte Carlo's Appeal is without Merit** | 16 |
| **V.** | **Conclusion** | 17 |
| | **Addendum of Statutes and Rules** | 18 |

## TABLE OF AUTHORITIES
### Cases

Pioneer Investment Services Co. v. Brunswick Associates Ltd., 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)    15

In Re Apf Co., 270 B.R. 363 (Bankr. D. Del. 2001)    9

In Re Bock Laundry Machine Co., 63 B.R. 221 (N.D. Ohio 1986)    13

Browner v. Rosen 56 B.R. 214 (D. Mass. 1985    12

Casco N. Bank, N.A. v. DN Assocs. (In re DN Assocs.), 3 F.3d 512 (1st Cir. 1993)    6

In Re Charter Co., 86 B.R. 280 (M.D. Fla. 1988)    8, 10, 11

In Re Calore Express Co., Inc., 199 B.R. 424 (Bankr. D. Mass. 1996)    10, 11

Darr v. Muratore, 8 F.3d 854 (1st Cir. 1993)    11

In Re Frottier, 185 B.R. 928 (S.D. Fla. 1995)    13

Envisonet Computer Services, Inc. v. ECS Funding LLC, 288 B.R. 163 (D. Maine 2002)    14, 15

Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc., 874 F.2d 431 (7th Cir. 1989)    7

In Re Meyer, 1998 U.S. District Lexis 4900 (E.D. Va. March 12, 1998)    8

In Re Neponset River Paper Co, 219 B.R. 918 (D. Mass. 1998)    7

In re: Orangebrook Concessions, Inc., 47 B.R. 858 (Bankr. S.D. Fla. 1985)    8, 9

In re Perry, Adams & Lewis Securities, 30 B.R. 845 (W.D. Mo. 1983)    12

In Re Public Service Co. of New Hampshire, 884 F.2d 11 (1st. Cir. 1989)    11

In Re Roti, 271 B.R. 281 (N.D. Ill. 2002)    7

In Re Sandra Cotton, Inc., 91 B.R. 659 (W.D. N.Y. 1988)    13

In Re Scionti 40 B.R. 947 (Bankr. D. Mass. 1984)    9

In Re Serra Builders, Inc., 970 F.2d 1309 (4th Cir. 1992)    15

In Re Tampa Chain Co., 835 F. 2d 54 (2d Cir. 1987)    13

In Re Vance, 298 B.R. 262 (E.D. Va. 2003)    11

In Re Wedgestone Financial, 142 B.R. 7 (D. Mass. 1992)    13

### Statutes

11 U.S.C. § 541    16

11 U.S.C. § 542    3, 12

11 U.S.C. § 553    10, 12

28 U.S.C. 158                                                    1

28 U.S.C. § 1334                                                1

Massachusetts General Laws Chapter 231 § 6C                     8

### Rules

District Court Local Rule 203                              2, 4, 12, 13

Fed. R. Civ. P. 6                                               14

Fed. R. Bankr. Pro. 8001                                        4

Fed. R. Bankr. Pro. 8006                                     2, 4

Fed. R. Bankr. Pro. 8010                                        1

Fed. R. Bankr. Pro. 8013                                        7

Fed. Rule Bankr. Proc. 9006                                    14

MLBR 9029-3                                                    13

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
Monte Carlo Cruise Concessions, Inc.     )        CIVIL ACTION
                              Appellant      )        NO. 04-CV-12215-DPW
v.                                                 )
                                                    )
DONALD LASSMAN, Chapter 7 Trustee,      )
Fisherman's Wharf Excursions, LLC        )
                              Appellee       )
_____)

## TRUSTEE/APPELLEE'S APPEAL BRIEF

### and

### TRUSTEE/APPELLEE'S BRIEF IN OPPOSITION TO APPELLANT MONTE CARLO CRUISE CONCESSIONS INC.'S MOTION TO REVIEW ORDER OF BANKRUPTCY COURT GRANTING PLAINTIFF'S REQUEST TO DISMISS APPEAL AND MONTE CARLO CRUISE CONCESSIONS INC.'S MOTION TO REINSTATE APPEAL.

Plaintiff Donald R. Lassman, Chapter 7 Trustee, Fisherman's Wharf Excursions, LLC, ("Trustee") submits this brief in support of its cross-appeal of a decision by the United States Bankruptcy Court and in opposition to Monte Carlo Cruise Concessions, Inc.'s ("Monte Carlo") appeal. This brief is also submitted in opposition to Monte Carlo's Motion to Review Order of Bankruptcy Court Granting Plaintiff's Request to Dismiss Appeal and Monte Carlo's Motion to Reinstate Appeal.

## I.    JURISDICTIONAL STATEMENT[1]

### Jurisdictional Statement Regarding Cross-Appeal

This action is an appeal from a final judgment of the United States Bankruptcy Court. This Court has jurisdiction over this appeal from the final judgment of the Bankruptcy Court pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 158 (a) and (c). The judgment of the Bankruptcy Court was entered on January 20, 2004. After the judgment

---

[1] Monte Carlo failed to assert a jurisdictional basis for its appeal, as required by Fed. R. Bankr. Pro. 8010.

entered on January 20, 2004, Plaintiff filed a motion to amend the judgment, seeking prejudgment interest. That motion was denied on March 8, 2004. Monte Carlo was granted leave to file a notice of appeal late and it filed its notice of appeal on April 1, 2004. The Trustee/Appellee's Notice of Cross-Appeal was timely filed on April 7, 2004.

II.    **STATEMENT OF THE ISSUES ON APPEAL**

**Statement of the Issues on Cross-Appeal**

1.  Whether the Court erred in not awarding prejudgment interest;

2.  Whether the Court erred when it determined that the doctrines of recoupment or setoff permitted Monte Carlo Cruise Concessions, Inc. ("Monte Carlo") to retain funds paid to it by debtor at or near the commencement of the charter arrangement;

3.  Whether, given the Court's holding that the $126,000 in check proceeds were "improperly retained" (Decision at 10), the Court erred in permitting any funds to be set off or recouped by Monte Carlo;

4.  Whether, even if Monte Carlo was entitled to set off or recoupment, it was entitled to any amount representing charter fees for any time period after repossession of the vessel or after the petition date;

5.  When the undisputed evidence was that Monte Carlo received $280,000 from the debtor, whether the Court erred when it determined that the Trustee was entitled to a judgment of only $91,000;

6.  Whether the Court erred by failing to determine that all funds received by Monte Carlo in excess of the initial month's charter fee of $63,000 constituted property of the estate which must be turned over to the Trustee.

**Statement of the Issues on Monte Carlo's Appeal[2]**

1.  Whether the Bankruptcy Judge was justified in dismissing the appeal where appellant failed to comply with time limits imposed by Fed. R. Bankr. Pro. 8006?

_____

[2] Monte Carlo appealed the judgment. The Bankruptcy Court dismissed the Appeal and that dismissal is also the subject of an appeal by Monte Carlo. In addition, Monte Carlo has raised the issue of the dismissal of its appeal by Motions under Local Rule 203.

2.    Whether the Bankruptcy Court erred when it refused to permit Monte Carlo to
retain all funds it received from the debtor?

**III.    STATEMENT OF THE CASE**

**PRIOR PROCEEDINGS**

The Trustee is the duly appointed Chapter 7 Trustee for Fisherman's Wharf
Excursions, LLC ("debtor)."  The Trustee initiated an adversary proceeding in the
Bankruptcy Court, Adv. Pro. No. 02-1015-WCH.  In that adversary proceeding, the
Trustee asserted a claim for turnover pursuant to 11 U.S.C. § 542.  It sought return of
funds paid by the debtor to Monte Carlo in connection with a "Bareboat Charter"
agreement with Monte Carlo whereby the debtor chartered a vessel known as the
"Midnight Gambler" from Monte Carlo for use in the debtor's business of offering
gambling cruises.  The debtor paid a total of $280,000 to Monte Carlo and the trustee
sought the turnover of all but $63,000 of that sum.  The Trustee alleged that the
remainder of the funds constituted property of the estate and also asserted that Monte
Carlo had obtained the funds as a result of fraudulent conduct.

Monte Carlo filed an answer and counterclaim.  The counterclaim asserted claims
for breach of contract.

The case was tried before Bankruptcy Judge Hillman on October 29, 2003.  On
January 20, 2004, the court ruled.  In its Decision, the court determined that the Trustee
should recover $91,000 from Monte Carlo.  The court also ruled in favor of the Trustee
on the counterclaim.[3]  A judgment entered to that effect.

The Trustee filed a motion to amend the judgment, seeking an award of
prejudgment interest.  That motion was denied on March 8, 2004.  That date triggered the
10 day period within which to file a notice of appeal.  On April 1, 2004, Monte Carlo
filed its Notice of Appeal, together with a Motion for Leave to File Notice of Appeal
Late.  The motion was allowed on April 12, 2004.  No filing fee was paid.  An April 1,
2004, docket entry established April 12, 2004 as the date for appellant's designation.  The
Trustee/Appellee's Notice of Cross-Appeal was timely filed on April 7, 2004. On April

---

[3] A copy of Judge Hillman's Decision is attached hereto as Exhibit A.

12, 2004 the court sent a notice to counsel for Monte Carlo requiring that the filing fee be paid by April 22, 2004.

On April 29, 2004, because no designation of items to be included in the record and no statement of issues had been filed and no fee paid, the Trustee sought dismissal of Monte Carlo's appeal. Local Rule 203 of the United States District Court for the District of Massachusetts states: "The Bankruptcy Court is authorized and <u>directed</u> to dismiss an appeal…in which an appellant has failed to file a designation of the items for the record or a statement of the issues as required by Bankruptcy Rule 8006." (emphasis added).

The Trustee's Request to Dismiss the Appeal was based on Monte Carlo's failure to comply with the requirement of Fed. R. Bankr. Pro. 8006 that "within 10 days after filing the notice of appeal" an appellant must file a designation of items to be included in the record on appeal as well as a statement of issues to be presented. No designation of items to be included in the record and no statement of issues had been filed as required. In addition, the filing fee required by Rule 8001 was not paid.

This was not the first example of Monte Carlo's failure to comply with time limits imposed by rule or order. Judge Hillman's Pretrial Order stated: "If a party wishes to file a trial memorandum, it must be filed with the PTS [i.e. Pretrial Statement]. No other briefs or memoranda will be allowed at trial, unless otherwise specifically ordered." The parties filed the PTS on October 15, 2003. The Trustee filed a trial brief on that date. Without seeking leave, Monte Carlo filed its trial brief on the day of trial, October 29, 2003.

In addition, the Pretrial Order required the parties to identify their trial exhibits. Monte Carlo failed to do that. See Decision at 10, note 9: "If Monte Carlo had complied with the PTS and listed all of its proffered exhibits, it would have at least partially solved this problem [i.e. lack of evidence of amount of damages], but it failed to do so…."

On May 6, 2004, 8 days after the Request to Dismiss the Appeal was filed, Monte Carlo filed an opposition to the Request to Dismiss Appeal. The only grounds in support of the opposition was Monte Carlo's statement "that it has provided the filing fee…and has also now submitted its designation of items to be included in the record as well as a statement of issues…." <u>It did not seek leave to file the designations or pay the filing fee late</u>.

Rule 8006 also requires that "if the record designated by any party includes a transcript…the party shall, immediately after filing the designation, deliver to the reporter and file with the clerk a written request for the transcript…."  According to the docket as of November 10, 2004, no such request has been filed and no transcript has been filed.

On July 15, 2004, the Court granted the Request to Dismiss Appeal.  Almost two weeks after the Court granted the Request to Dismiss Appeal, on July 28, 2004, Monte Carlo filed a motion for reconsideration.  As reasons, it states that there was no prejudice or undue delay nor was the judicial process unduly hindered.  On August 4, 2004, the Trustee filed an Opposition to the Motion for Reconsideration.[4]  On August 25, 2004 Judge Hillman denied the motion for reconsideration.

## STATEMENT OF FACTS

The following facts were admitted in the Joint Pretrial Statement[5]:

a.  The debtor, Fisherman's Wharf Excursions, LLC, filed a Chapter 7 petition on or about August 11, 2000.  Donald R. Lassman is the duly appointed Chapter 7 Trustee ("Trustee").

b.   On or about May 15, 2000, the debtor entered into a "Bareboat Charter" agreement with defendant Monte Carlo Cruise Concessions, Inc. ("Monte Carlo") whereby the debtor chartered a vessel known as "Midnight Gambler" from Monte Carlo.[6]

c.  At all times relevant to this matter, Dan Teitel was president of Monte Carlo.

d.   The Bareboat Charter agreement provided for a monthly rental of $60,000 plus applicable taxes and $10,000 per month for insurance.  Such charges were to commence upon delivery of the vessel to debtor.

e.  Pursuant to the charter agreement, on or about May 15, 2000, the debtor provided a check to Monte Carlo in the amount of $126,000, representing a deposit for first and last months' charter fees and taxes.

f.  On or about May 19, 2000 the sum of $154,000 was wire transferred from the debtor to Monte Carlo.

---

[4] A copy of the Trustee's Opposition to the Motion for Reconsideration is attached hereto as Exhibit B.
[5] A copy of the Joint Pretrial Statement is attached hereto as Exhibit C.
[6] A copy of the "Bareboat Charter" is attached to Monte Carlo's brief.

    g.   The check for $126,000 was deposited by Monte Carlo into its bank account.

    h.   As a result, Monte Carlo actually received the sum of $280,000 from debtor at or before the commencement of the charter, i.e. the check for $126,000 and the wire transfer of $154,000.

    i.   On August 3, 2000 the vessel was repossessed by Monte Carlo.

    j.   Monte Carlo has filed no proof of claim in this case.

The following facts were found by the Bankruptcy Judge:

    a.   The vessel was delivered on or about May 22, 2000.  Decision at 4.

    b.   Once Monte Carlo received the $154,000 in wired funds on or about May 19, 2000, Monte Carlo had no claim of right to the proceeds of the $126,000 check.  Id. at 9.

    c.   On or about May 19, 2000, the debtor had a right to recover the $126,000.  Id. at 9.

    d.   The check proceeds of $126,000 were "improperly retained" by Monte Carlo.  Id. at 10.

    e.   Monte Carlo waived the issue of the applicability of Maritime law by failing to address it in the pretrial Statement.  Id. at 6-7.

    f.   Monte Carlo offered no proof that maritime law differs from the general common law of contracts.  Id. at 7.

    g.   There was "a complete absence of credible evidence" to support Monte Carlo's claim for damages, whether as setoff, recoupment or on the counterclaim.  Id. at 8.

## IV.    ARGUMENT-CROSS-APPEAL

### Standard for Review

The applicable standard of review in this Circuit is set out in Casco N. Bank, N.A. v. DN Assocs. (In re DN Assocs.), 3 F.3d 512, 515 (1st Cir. 1993)(citations omitted):

> A district court reviews a bankruptcy court's judgment in the same manner in which we review lower court proceedings. "Findings of fact . . . shall not be set aside unless clearly erroneous . . . ."  . Applications of law are

> reviewed de novo and are set aside only when they are made in error or
> constitute an "abuse of discretion."

See also, Fed. Rules Bankr. Proc. 8013, which provides that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."

## 1.  __The Trustee was entitled to prejudgment interest.__

When the court did not award any pre-judgment interest, the Trustee filed a Motion to Amend Judgment pursuant to Fed. R. Civ. P. 59(e) seeking it.  The court denied the motion, stating "In view of the amount of the award, I decline to exercise my discretion to award pre-judgment interest."

There is no federal prejudgment interest rate.  The Bankruptcy Court had discretion to award prejudgment interest and at what rate.   See In Re Neponset River Paper Co. , 219 B.R. 918-20 (D. Mass. 1998) ("[B]ecause the loss of value to the estate depends not just on the amount of the payment but on how long that payment was withheld from the estate, the estate cannot recover the full value to which it is entitled under § 550(a) unless it receives interest from the date of demand"); In Re Roti,  271 B.R. 281, 292-93 (N.D. Ill. 2002):

> The Bankruptcy Code does not specifically provide for the award of prejudgment interest. It is within the Court's discretion whether to grant prejudgment interest. The purpose of allowing prejudgment interest is compensatory, not punitive; such interest is granted to make the prevailing party whole. Not only must the award of prejudgment interest be compensatory, it is also within the Court's discretion to determine if such award is equitable.  ("Discretion must be exercised according to law, which means that prejudgment interest should be awarded unless there is a sound reason not to do so.").

 (citations omitted, emphasis added).  Courts determine the appropriate rate of interest and from when to calculate interest in accordance with the equities of the case.  In Roti, like the instant case, a turnover action under 11 U.S.C. § 542, the Court exercised its discretion to apply the federal post-judgment rate set by 28 U.S.C. § 1961.  Interest was determined from the petition date.  See also Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc., 874 F.2d 431, 436-37 (7th Cir. 1989) (Court applied the prime rate after holding that the post-judgment rate under 28 U.S.C. § 1961 was "too low").

If permitted by state law, interest at the state rate is payable on claims under the Code. In Re Meyer, 1998 U.S. District Lexis 4900 (E.D. Va. March 12, 1998) (In awarding judgment in a fraudulent transfer case, the court applied Virginia's statutory rate of 9% from the date of the fraudulent transfer, more than sixteen months before the petition date.); In Re Charter Co., 86 B.R. 280, 283 and n. 5 (M.D. Fla. 1988) (applying Texas' rate of 18%). Massachusetts General Laws Chapter 231 § 6C provides for a 12% prejudgment rate in contract actions, calculated from the date of breach or demand. The retention of funds from the estate is analogous to a contract action and the 12% rate should be applied from the petition date.

While the Bankruptcy Judge declined to exercise his discretion and award prejudgment interest, in this case there was no basis for declining to award prejudgment interest and the court abused its discretion by denying Trustee's request. Defendant Monte Carlo had use of the debtor's funds from May 19, 2000. See Court's Decision at 3-4. The matter should be remanded to the Bankruptcy Court who should add prejudgment interest to the judgment from either May 19, 2000 or from the petition date of August 11, 2000 at a rate of 12% per year or at such rate and for such period as the Court deems equitable.

## 2. All Funds in Addition to the First Month's Fees Were Property of the Estate and Subject to Turnover.

There is no dispute that Monte Carlo was entitled to the first month's rent of $63,000.[7] The agreement called for $140,000 as an initial deposit. The court did not determine whether Teitel promised to return the check, as debtor alleged, once the wire transfer was received. Decision at 4. Nevertheless, at the time Monte Carlo had received a total of $280,000, no more than $140,000 could conceivably be treated as a deposit, with the rest being improperly retained by Monte Carlo. After applying the $63,000 first month's rent to the deposit of $140,000, the remainder, i.e. $77,000, to the extent it may be considered analogous to prepaid rent, "is property of the Estate to be administered by the Trustee for the benefit of all creditors." In re: Orangebrook Concessions, Inc., 47 B.R. 858, 859 (Bankr. S.D. Fla. 1985). (Amount paid at commencement of tenancy and designated as last ninety days of final year's rent is prepaid rent and not security even

---

[7] The agreement anticipated monthly insurance payments of $10,000, but there was no evidence that such payments were made and the court's Decision did not credit Monte Carlo with any insurance payments.

though contract stated deposit was to be "held as a security deposit").  Courts distinguish between a security deposit on a real estate lease and prepaid rent.  A security deposit may be treated as a secured claim, but prepaid rent is property of the estate.  Compare Orangebrook with In Re Apf Co., 270 B.R. 363, 364-5 (Bankr. D. Del. 2001) (Landlord is a secured creditor to the extent of any security deposit it holds) and In Re Scionti 40 B.R. 947, 948 (Bankr. D. Mass. 1984) (Sum specifically designated as "security deposit" may be set off against pre-petition rent claim.)  Here, there was no security deposit and so deposit sums beyond the initial month's rent are property of the estate and would not be subject to a set-off, even if Monte Carlo had asserted such a right.[8]  Monte Carlo is entitled to retain the initial month's charter fee of $63,000.  The rest of the $140,000 deposit is property of the estate and must be turned over to the Trustee.  The additional $140,000 was retained by Monte Carlo without any plausible right to do so.  The Trustee should have been awarded a judgment for $217,000 ($280,000 less $63,000).

Monte Carlo could have refused to go through with the charter once it determined the $126,000 check was for an incorrect amount or might not be honored.  Instead, it asked for, and received, the amount it demanded, $154,000, by wire transfer.  As the Court found, any default was waived by Monte Carlo when it received the wire transfer. Decision at 9.

The charter agreement was not amended to require a $280,000 deposit.  Monte Carlo simply took unfair advantage of the situation, cashed the check, kept the wire proceeds and expects to be permitted to retain all of those funds.  But Monte Carlo has no right to retention of property of the estate simply because it possesses that property.

**3.     Monte Carlo had no right to setoff or recoup any funds in addition to the first month's fees.**

The judge permitted Monte Carlo to keep funds representing rent and fees of $63,000 per month that were due at the start of the charter, May 22, 2000, and on June 22 and July 22.  Decision at 9 and 10.  The judge framed the issue: "The issue then becomes whether Monte Carlo, in possession of funds to which it had no right on June 21, could apply those funds to sums becoming due thereafter under the doctrine of recoupment."

---

[8] The Charter Agreement provided for "additional security" in the form of a $60,000 letter of credit, but the letter of credit was never provided.  Decision at 3.

(emphasis added). Id. at 9. The court concluded that Monte Carlo could apply the funds. Monte Carlo was credited with three months fees at $63,000 per month or a total of $189,000. Since it had received a total of $280,000, it was required to turnover the remainder of $91,000.

The court then stated: "Recoupment permits the crediting of reciprocal rights against each other where those rights arose under the same transaction." Decision at 9. It also determined that the result would be the same under either setoff or recoupment. Id. n.8.

Monte Carlo did not act to setoff the amounts it held prior to the petition date. It did not assert a claim for any right of setoff or recoupment in its answer or counterclaim and accordingly waived any setoff rights it might have asserted under 11 U.S.C. § 553, which preserves state law setoff rights. Section 533 states:

§ 553. Setoff

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title [11 USCS §§ 101 et seq.] against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that--
  (1) the claim of such creditor against the debtor is disallowed; (emphasis added).

The statute obviously anticipates that in order to take advantage of any setoff rights, Monte Carlo was required to assert a claim against the bankruptcy estate. No proof of claim from Monte Carlo appears on the Court's claim register. There is no assertion of setoff in the Joint Pretrial Statement, the document the parties agreed would govern the trial. Moreover, no specific amount of any setoff has ever been asserted in any pleading. "A creditor otherwise entitled to setoff may waive the right to setoff if the setoff is not timely asserted." In Re Calore Express Co., Inc., 199 B.R. 424, 431 (Bankr. D. Mass. 1996).

In fact, Monte Carlo never took any action that could constitute a setoff. See In Re Charter Co., 86 B.R. 280, 281 n. 2 (Bankr. M.D. Fla. 1988) ("setoff typically occurs when a creditor (i) decides to exercise the right to setoff, (ii) takes some action to

accomplish the setoff, and (iii) prepares some record, usually in the creditor's financial books, which evidences the setoff.")

The trial judge specifically found that Monte Carlo had no right to keep the $126,000 once it received the wire transfer:

> With the arrival of the wired funds, Monte Carlo had no claim of right to the proceeds of the check, nor did Teitel assert any such right. According to his testimony, he did not even know that the check had cleared at that time. Debtor (not yet such) could have recovered the funds then.

Decision at 9. Nevertheless, he permitted Monte Carlo to retain those funds and apply them against monthly fees as they accrued. That was clearly erroneous because it was inconsistent with his determination that Monte Carlo had no right to the funds. The result was that Monte Carlo was allowed to apply funds that it had improperly retained and thus gain an advantage over all other creditors. If Monte Carlo had returned the $126,000 proceeds of the check once it received the wire transfer, as the court found it should have,[9] it would have been left with a claim against the chapter 7 estate. Instead, it was in effect rewarded for its inequitable conduct.

Even if Monte Carlo had asserted a right of setoff or recoupment, that assertion was not "valid" because setoff and recoupment are equitable remedies. In Re Vance, 298 B.R. 262, 267 (E.D. Va. 2003) ("Recoupment is an equitable doctrine that has long been applied in the bankruptcy context.") In Re Calore Express Co., Inc., 199 B.R. 424, 432 (Bankr. D. Mass. 1996) (Setoff is an equitable doctrine). Monte Carlo had the burden of establishing its right to setoff. Id. at 431. Monte Carlo's inequitable conduct in retaining the proceeds from the $126,000 check should preclude any setoff or recoupment. See In Re Charter Co., 86 B.R. at 283 (Court "has broad equitable discretion in deciding whether to permit setoff.").

Only a valid claim may be setoff by a creditor. In Re Public Service Co. of New Hampshire, 884 F.2d 11, 14 (1st. Cir. 1989). Clearly, the money obtained as a result of the misrepresentation by Teitel does not support a valid setoff claim. In general, a setoff will usually result in a preference of one creditor over others. Darr v. Muratore, 8 F.3d 854, 860 (1st Cir. 1993) ("allowing setoff undermines a basic premise of bankruptcy law, equality among creditors, by permitting a creditor to obtain full satisfaction of a claim by

---

[9] "With the arrival of the wired funds, Monte Carlo had no claim of right to the proceeds of the check."

extinguishing an equal amount of the creditor's obligation to the debtor ... in effect, the creditor receives a "preference").  Here, the result of allowing any setoff or recoupment by Monte Carlo will also result in favorable treatment to it, at the expense of legitimate creditors with clean hands, including several wage claimants.  Allowance of setoff or recoupment in any amount would allow Monte Carlo to benefit from its own deceitful conduct.

In addition, the requisite mutuality is not present.  "In order for the right of setoff to obtain, there must be *mutual* debt owed by the estate to the defendant [under 11 USCS § 553(a)] and such mutuality cannot exist when the moneys advanced are the property of the estate and accordingly subject to a turnover order under 11 USCS § 542(a)."  In re Perry, Adams & Lewis Securities, 30 B.R. 845, 851 (W.D. Mo. 1983).

The fraudulent conduct that resulted in the wire transfer proceeds would preclude any setoff or recoupment in any event.  Browner v. Rosen 56 B.R. 214, 217 (D. Mass. 1985).  To affirm the trial court would be to reward Monte Carlo for its inequitable conduct and to prefer it to the other creditors who hope to receive a distribution.

**4.  Even if Monte Carlo was entitled to recoupment or setoff, it was only entitled to a credit for the period of actual use of the vessel.**

The bankruptcy court credited Monte Carlo with $63,000 per month or a total of $189,000.  It determined that the monthly charter fee was due on the 22nd of the month, the day the charter started.  As set forth above, that was clearly erroneous.  However, even if the court was correct in allowing Monte Carlo to retain funds beyond the first month's fees, it should have applied the credit only for the period of actual use, i.e. May 22 to August 3, a period of 72 days or 2.4 months.  Thus, at most, Monte Carlo would be entitled to assert a credit of $144,000 ($60,000 x 2.4) for debtor's actual use of the vessel, plus taxes of $7,200 for a total credit of $151,200.  Under this analysis, the judgment should have been $128,800 ($280,000 less $151,200).

12

**ARGUMENT-MONTE CARLO'S APPEAL**[10]

**1.    The Bankruptcy Judge did not Abuse his Discretion when he Dismissed the Appeal and Denied the Motion for Reconsideration.**

Monte Carlo failed to provide a valid reason for the Bankruptcy Court to reconsider its order.  United States District Court Local Rule 203[11] directs the bankruptcy court to dismiss the appeal for failure to file the required designations and provides that "Bankruptcy court orders entered under this subsection may be reviewed by the district court on motion filed within ten days of the entry of the order."  The appropriate standard for review of a dismissal of an appeal for failure to comply with non-jurisdictional time limits is abuse of discretion.  In Re Tampa Chain Co., 835 F. 2d 54, 55 (2d Cir. 1987) ("the court should exercise discretion to determine whether dismissal is appropriate in the circumstances, and its decision to dismiss will be affirmed unless it has abused its discretion.")

Failure to file the transcript provides independent grounds to support dismissal.  See In Re Sandra Cotton, Inc., 91 B.R. 659, 660 (W.D. N.Y. 1988) (District court refused to vacate bankruptcy court's order of dismissal for failure to file the transcript).

Instead of moving to enlarge the time to file its designations and filing fee, Monte Carlo simply filed them late, after plaintiff sought dismissal.  Then, instead of seeking review by the district court as permitted by the Local Rule, Monte Carlo sought reconsideration.   However, "[t]o succeed on a motion to reconsider, the Court requires that the moving party show newly discovered evidence or a manifest error of fact or law." In Re Wedgestone Financial, 142 B.R. 7, 8 (D. Mass. 1992).  Failure to give a reason for noncompliance with the requirements of Rule 8006 is grounds for dismissal.  See In Re Frottier, 185 B.R. 928, 929 (S.D. Fla. 1995) (Failure "to cite any grounds for his failure to file the required designation of record and statement of the issues" resulted in denial of debtor's motion for reconsideration of dismissal of appeal).

See In Re Bock Laundry Machine Co., 63 B.R. 221, 222 (N.D. Ohio 1986):

---

[10] This section of the brief should be considered as opposition to Monte Carlo's Motions as well as its appeal.
[11] District Court Local Rule 203 is applicable in the bankruptcy court.  See MLBR 9029-3.

Upon a review of the record, the Court finds that dismissal is appropriate
in this case. Pursuant to B.R. 8006, Meyers is required to "file with the
clerk of the bankruptcy court and serve on the appellee a designation of
the items to be included in the record on appeal and a statement of the
issue to be presented . . . ." Meyers has failed to take this action within the
requisite ten days after filing of the notice of appeal. Nor has Meyers
moved for an extension of time in which to comply with the foregoing
requirements. *See* B.R. 9006

Once the time to perform an act has expired, a court may exercise its discretion to
allow an enlargement of time and, "on motion made after the expiration of the specified
period [the court may] permit the act to be done where the failure to act was the result of
excusable neglect."  Fed. Rule Bankr. Proc. 9006 (b) (1) (2) and Fed. R. Civ. P. 6 (b) (1)
(2).  Monte Carlo did not move to extend the time and did not even assert excusable
neglect as support for its failures to comply with the requirements of the Rules.

## 2.  **There was no excusable neglect**

Even if Monte Carlo had properly sought an enlargement of time by filing a
motion, or if the Bankruptcy Court had been inclined to consider the request for
reconsideration as a motion under Rule 9006, Monte Carlo did not meet the excusable
neglect standard in this Circuit:

In making this determination of whether excusable neglect exists, the
Court will consider all the relevant circumstances including: "the danger
of prejudice to the debtor, the length of the delay and its potential impact
on judicial proceedings, the reason for the delay, including whether it was
within the reasonable control of the movant, and whether the movant acted
in good faith." *Pioneer Investment Services Co. v. Brunswick Associates
Ltd.*, 507 U.S. 380, 395, 113 S. Ct. 1489, 1498, 123 L. Ed. 2d 74 (1993).

The First Circuit has observed that "'the four Pioneer factors do not carry
equal weight; the excuse given for the late filing must have the greatest
import. While prejudice, length of delay, and good faith might have more
relevance in a closer case, the reason-for-delay factor will always be
critical to the inquiry . . . .'" *Graphic Communications International Union
v. Quebecor Printing Providence*, 270 F.3d 1, 6 (1st Cir. 2001) (quoting
*Hosp. del Maestro v. National Labor Relations Board*, 263 F.3d 173, 175
(1st Cir. 2001) (*per curiam*) (internal citations omitted)). This focus
comports with the *Pioneer* Court's recognition that "inadvertence,
ignorance of the rules, or mistakes construing the rules do not usually
constitute 'excusable' neglect." *Pioneer*, 507 U.S. at 392, 113 S. Ct. 1489.
Here, Appellant's counsel states that the delay resulted from his failure to

calendar the ten-day deadline for filing the designation. Counsel's excuse for having failed to file a timely designation is not compelling. The First Circuit has repeatedly upheld findings of "no excusable neglect" where the court cited the absence of unique or extraordinary circumstances. *See Graphic Communications International Union*, 270 F.3d at 6; *Mirpuri v. ACT Manufacturing, Inc.*, 212 F.3d 624, 631 (1st Cir. 2000).

Envisonet Computer Services, Inc. v. ECS Funding LLC, 288 B.R. 163, 165-66 (D. Maine 2002).

Here, there was no reason given for the failure to comply with the Rule when Monte Carlo opposed the Request to Dismiss Appeal.  In its motion to reconsider, Monte Carlo didn't even address the reason for delay that is the most important factor in evaluation of excusable neglect.  See In Re Serra Builders, Inc., 970 F.2d 1309, 1311 (4th Cir. 1992) (Dismissal affirmed where appellant failed "to present the court with any compelling reasons for its delay in filing its designation" under Rule 8006; had been "negligent with regards to the entire procedural requirements of the bankruptcy appeals process;" and had "never filed a request for an extension before the time had passed for appellant to file its designation").

Moreover, Monte Carlo was wrong when it stated that the Plaintiff has not suffered prejudice.  The judgment was final and appealable on March 8, 2004. More than eight months have passed since then.  The Trustee represents the interests of the creditors.  There are many creditors, including several with wage claims, whose claims cannot be addressed or paid until this case is over.  Any delay is significant and prejudicial to them.  Monte Carlo's failure to comply with the rules has resulted in a significant delay.  If this Court grants it relief as requested, the delay will continue.

Whether Monte Carlo was ignorant of the Rules or simply considered the Rules' mandated time requirements as mere suggestions is of no import. "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect."  Pioneer, 507 U.S. at 392.

**3.  Monte Carlo's Appeal is without Merit.**

As an additional reason for its motions, Monte Carlo asserts that its appeal "has substantial merit as the Bankruptcy Judge failed to apply the correct law, i.e. the general maritime law of the United States."  Monte Carlo's Motion to Review Order of Bankruptcy Court at 1.  However, the merits of an appeal are not one of the <u>Pioneer</u> factors to be considered in determining whether excusable neglect exists.

Even if the merits should be considered, Judge Hillman's Decision properly disposed of that issue at 6-7:

> It would be well to clear the decks a little at the outset, particularly with regard to the issue of the applicability of maritime law to the issues before me.
> I ruled at trial that Monte Carlo waived this issue by not reserving it in the PTS, and that the general rule applies that "a party's stipulations are binding on that party and may not be contradicted by him at trial." Further, nowhere in its argument or briefing does it offer any proof that general maritime law differs from the general common law when it comes to the construction of contract provisions. Indeed, maritime contracts are generally construed in accordance with Uniform Commercial Code, the common law, or other statutory law. (Citations and footnote omitted).

Monte Carlo addresses the issue of the applicability of maritime law in its brief on appeal.  As Judge Hillman observed in his Decision, Monte Carlo doesn't describe how maritime law differs from the common law of contract.  The primary issue at trial was not what the contract meant or how much of a claim against the Chapter 7 estate Monte Carlo might have asserted as a result of the debtor's default.  What the court needed to determine was whether the funds obtained by Monte Carlo from the debtor in excess of the first month's fees were property of the estate and thus subject to turnover.  This was clearly an issue of bankruptcy law, not maritime law.  See 11 U.S.C. § 541 which defines property of the estate.  Monte Carlo would have this Court hold that the Bankruptcy Court was powerless to determine whether the funds obtained by Monte Carlo constitute property of the estate.  Nothing in maritime law supports such a position.

V.     **CONCLUSION**

For the reasons stated herein, the Court should:

1.     Modify the judgment of the Bankruptcy Court to increase the amount of the judgment to $217,000;

2.     Remand the case to the Bankruptcy Court and direct the Court to award reasonable prejudgment interest;

3.     Deny Monte Carlo's Motion for Review of Judge Hillman's order dismissing the appeal;

4.      Deny Monte Carlo's Motion to Reinstate Appeal; and

5.     Dismiss Monte Carlo's Appeal.


Dated: November 18, 2004

<u>/s/ Stephen M. Sheehy</u>
Stephen M. Sheehy, Esq. BBO No. 457150
Attorney for Appellee/Cross-Appellant Donald R. Lassman, Chapter 7 Trustee,
Fisherman's Wharf Excursions, LLC
Stephen M. Sheehy, P.C.
460 Totten Pond Road, Suite 230
Waltham MA 02451
781-466-8999

## **ADDENDUM**

Pursuant to Fed. R. Bankr. Proc. 8010 (b), relevant parts of statutes and rules are
reproduced below:

### **Statutes**

#### 11 U.S.C. § 541

(a) The commencement of a case under section 301, 302, or 303 of this title creates an
estate. Such estate is comprised of all the following property, wherever located and by
whomever held:

  (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable
interests of the debtor in property as of the commencement of the case.

#### 11 U.S.C. § 542

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a
custodian, in possession, custody, or control, during the case, of property that the trustee
may use, sell, or lease under section 363 of this title, or that the debtor may exempt under
section 522 of this title, shall deliver to the trustee, and account for, such property or the
value of such property, unless such property is of inconsequential value or benefit to the
estate.

(b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt
that is property of the estate and that is matured, payable on demand, or payable on order,
shall pay such debt to, or on the order of, the trustee, except to the extent that such debt
may be offset under section 553 of this title against a claim against the debtor.

#### 28 U.S.C. § 158 (a) and (c)

(a) The district courts of the United States shall have jurisdiction to hear appeals[--]

  (1) from final judgments, orders, and decrees;

  (2) from interlocutory orders and decrees issued under section 1121(d) of title 11
increasing or reducing the time periods referred to in section 1121 of such title; and

  (3) with leave of the court, from other interlocutory orders and decrees;
 of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges
under section 157 of this title [28 USCS § 157]. An appeal under this subsection shall be
taken only to the district court for the judicial district in which the bankruptcy judge is
serving.

(c) (1) Subject to subsection (b), each appeal under subsection (a) shall be heard by a 3-
judge panel of the bankruptcy appellate panel service established under subsection (b)(1)
unless--

    (A) the appellant elects at the time of filing the appeal; or

(B) any other party elects, not later than 30 days after service of notice of the appeal, to have such appeal heard by the district court.

28 U.S.C. § 1334

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1961

(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court….Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[.] the date of the judgment.

Massachusetts General Laws Chapter 231 § 6C

In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent per annum, from the date of the breach or demand. If the date of the breach or demand is not established, interest shall be added by the clerk of court, at such contractual rate, or at the rate of twelve per cent per annum from the date of the commencement of the action, provided, however, that in all actions based on contractual obligations, upon a verdict, finding or order for judgment against the commonwealth for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at a rate calculated pursuant to the provisions of section six I from the date of the breach or demand. If the date of the breach or demand is not established, such interest shall be added by the clerk of the court from the date of the commencement of the action.

## **Rules**

United States District Court for the District of Massachusetts Local Rule 203:

The Bankruptcy Court is authorized and directed to dismiss an appeal…in which an appellant has failed to file a designation of the items for the record or a statement of the issues as required by Bankruptcy Rule 8006…. Bankruptcy court orders entered under this subsection may be reviewed by the district court on motion filed within ten days of the entry of the order.

<u>Fed. R. Civ. P. 6:</u>

(b) Enlargement. When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect;

<u>Fed. R. Bankr. Proc. 8001.</u>

(a) Appeal as of right; how taken. An appeal from a judgment, order, or decree of a bankruptcy judge to a district court or bankruptcy appellate panel as permitted by <u>28 U.S.C. § 158</u>(a)(1) or (a)(2) shall be taken by filing a notice of appeal with the clerk within the time allowed by Rule 8002. An appellant's failure to take any step other than timely filing a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court or bankruptcy appellate panel deems appropriate, which may include dismissal of the appeal. The notice of appeal shall (1) conform substantially to the appropriate Official Form, (2) contain the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their respective attorneys, and (3) be accompanied by the prescribed fee.

<u>Fed. R. Bankr. Proc. 8006</u>

Within 10 days after filing the notice of appeal as provided by Rule 8001(a), entry of an order granting leave to appeal, or entry of an order disposing of the last timely motion outstanding of a type specified in Rule 8002(b), whichever is later, the appellant shall file with the clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented….
If the record designated by any party includes a transcript of any proceeding or a part thereof, the party shall, immediately after filing the designation, deliver to the reporter and file with the clerk a written request for the transcript and make satisfactory arrangements for payment of its cost.

<u>Fed. R. Bankr. Proc. 8010</u>

(a) Form of briefs. Unless the district court or the bankruptcy appellate panel by local rule otherwise provides, the form of brief shall be as follows:
   (1) Brief of the appellant. The brief of the appellant shall contain under appropriate headings and in the order here indicated:
      (A) A table of contents, with page references, and a table of cases alphabetically arranged, statutes and other authorities cited, with references to the pages of the brief where they are cited.
      (B) A statement of the basis of appellate jurisdiction.
      (C) A statement of the issues presented and the applicable standard of appellate review.

(D) A statement of the case. The statement shall first indicate briefly the nature of the case, the course of the proceedings, and the disposition in the court below. There shall follow a statement of the facts relevant to the issues presented for review, with appropriate references to the record.

(E) An argument. The argument may be preceded by a summary. The argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on.

(F) A short conclusion stating the precise relief sought.

Fed. Rules Bankr. Proc. 8013

Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Fed. R. Bankr. Proc. 9006.-

(b) Enlargement.

 (1) In general. Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

MLBR 9029-3

The following U.S. District Court Local rules shall be applicable in the United States Bankruptcy Court for the District of Massachusetts:

203 (Bankruptcy Appeals)

Exhibit A

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### Eastern Division

```
=========================================
                                      *
In Re:                                *
    FISHERMAN'S WHARF EXCURSIONS, LLC, *  Chapter 7
                                      *  No. 00-15415-WCH
                                      *
                        Debtor        *
                                      *
=========================================
                                      *
DONALD LASSMAN, Trustee,              *
                                      *  Adversary Proc.
                        Plaintiff     *  No. 02-1015
                                      *
              vs.                     *
                                      *
MONTE CARLO CRUISE CONCESSIONS, INC., *
                                      *
                        Defendant     *
                                      *
=========================================
```

## D E C I S I O N

### Introduction

Donald Lassman ("Trustee") is the Chapter 7 trustee of the debtor, Fisherman's Wharf Excursions, LLC ("Debtor"). He commenced this adversary proceeding against Monte Carlo Cruise Concessions, Inc. ("Monte Carlo") asserting a claim for turnover pursuant to 11 U.S.C. § 542. Monte Carlo answered and counterclaimed for damages caused by Debtor's alleged breach of the charter agreement

001965

described below.  For the reasons stated, I will enter judgment for
the Trustee in the amount of $91,000.

## Findings of Fact

What follows constitutes my findings of fact and conclusions
of law in accordance with Fed. R. Civ. P. 52(a), made applicable
here by Fed. R. Bankr. P. 7052.

On or about May 15, 2000, Debtor entered into a "Bareboat
Charter" agreement (the "Agreement") with Monte Carlo whereby
Debtor chartered a vessel known as "Midnight Gambler" from Monte
Carlo.[1]  At all times relevant to this matter, Dan Teitel
("Teitel") was president of Monte Carlo.

The Agreement provided for a monthly rental of $60,000 plus
applicable taxes and $10,000 per month for insurance, to commence
upon delivery of the vessel to Debtor and to be paid in cash or a
cashier's check.  It provided that, at the inception of the term of
the Agreement Debtor would pay $140,000 plus applicable taxes,
which represented the first and last month's rent and insurance
payments.  "Additional security", in the form initially of a letter
of credit in the amount of $60,000, was to be posted with Monte
Carlo's attorneys, to be replaced with cash on or before July 15,
2000.  A forum selection clause designated "a court of competent
jurisdiction within Miami-Dade County, Florida" as the appropriate

---

[1]   The Agreement was admitted into evidence, with its
addendum, as Plaintiff's Ex. 1.  It was executed on behalf of
Debtor by the president of Sandoro Corp., its managing member.

Q:\HILLMAN\Fish2.wpd                    2

forum.

Notwithstanding the express monetary conditions of the Agreement, on or about May 15, 2000, Debtor provided a normal bank check to Monte Carlo in the amount of $126,000.[2]  No letter of credit or cash to satisfy the requirement for additional security was ever tendered. Despite the discrepancies in amount and nature of the deposit, the parties stipulated that the payment had been made "pursuant to the charter agreement" and represented "a deposit for first and last months' charter fees and taxes." *Joint Pretrial Statement* ¶2e.

Teitel testified that Monte Carlo deposited the check on May 16, 2000, and upon inquiry learned that it was drawn against insufficient funds.[3]  This occasioned a conversation between Teitel and Vincent J. DiMento ("DiMento"), attorney for and an investor in Debtor, as a result of which DiMento wire transferred $154,000 of

---

[2]  It was not Debtor's own check but was drawn on the account of Old Colony Construction Corp., a member of Debtor. There was no clear testimony as to how the amount of the check was determined.

[3]  The deposit slip in evidence indicates that the date of deposit was May 19. I assume that Teitel meant that he checked with a bank on May 16, either the drawee or the depository bank, and learned that the check was drawn against insufficient funds without an actual deposit being made on that date.  (An unrelated deposit of a check shown on the bank statement was indicated as "reversed" because of a missing endorsement.  No such entry appears as to the check in question here).

his own funds to Monte Carlo's account on May 19, 2000.[4] Coincidentally, the check cleared on the same date.

DiMento testified that Teitel agreed to return the check, thought to be backed by insufficient funds, upon receipt of the wire transfer. Teitel denies this. In any event, the check cleared and no funds were returned to or on behalf of Debtor.

Teitel contends that he never learned that the check had cleared until he received his bank statement the following month.[5]

Possession of the vessel appears to have been delivered about May 22, 2000, starting the running of the monthly payment clock.

On July 20, DiMento sent a letter to Teitel by facsimile, accusing Monte Carlo of "fraud" because of the deposit of the check. DiMento testified that he learned that the check had cleared only at about that time.

Debtor made no further payments to Monte Carlo and on August 3, 2000 the Midnight Gambler was repossessed. On August 11, 2000, Debtor filed its petition under Chapter 7.

### Procedural Posture

In accordance with the standard practice in this session, I

---

[4] This amount represents first and last month rent and insurance, for a total of $140,000. The testimony is a bit fuzzy about what the remaining $14,000 represents, but resolution of that issue is not necessary.

[5] The bank statement, introduced in evidence, covers the period 4/29/2000 through 5/31/2000.

Q:\HILLMAN\Fish2.wpd                    4

issued a Pre-Trial/Hearing Order (the "Order") on July 23, 2003. *Docket* No. 27. One of the primary foci of the Order is the requirement that the parties join in a Joint Pretrial Statement ("PTS") which statement facts which are agreed and those in dispute, lists exhibits to be introduced, provides lists of witnesses, and narrows the issues to those actually required to be tried. In their PTS, the parties proffered the following:

> 3. *The following issues of fact, and no others, remain to be litigated:*
>
> a. Whether Dan Teitel represented to DiMento that the $126,000 check would be returned to the debtor uncashed upon receipt of the $154,000 wire transfer?
>
> b. How much of the $280,000 received by Monte Carlo represents property of the estate?
>
> 4. *The following issues of law, and no others, remain to be litigated:*
>
> a. Whether money received by Monte Carlo in excess of the first month's charter fee constitutes property of the estate, to be turned over to the trustee.
>
> . . . .
>
> 11. *The following admissions have been made by the parties, and the parties have specified the foregoing issues of fact and law remaining to be litigated. Therefore, this PTS shall supercede the pleadings and govern the course of the trial of this cause.*

PTS, ¶¶ 3, 4, 11 (emphasis added).

I set out these provisions of the PTS *in extenso* because, as will be seen below, Monte Carlo seeks to broaden the issues before

me well beyond the bounds of the reserved issues.[6]

### Position of the Trustee

The Trustee asserts that Monte Carlo is not entitled to retain the funds relating to the last month's rent and insurance or $60,000 and that sum should be turned over to the Trustee. He asserts that application of admiralty law would not affect the result of this matter; that the forum selection clause of the Agreement has been waived, and that Monte Carlo did not have a valid setoff claim.

### Position of Monte Carlo

Monte Carlo first insists that general maritime law controls the outcome of this case. It cites to that body of law for the principles that the Agreement is to be enforced in accordance with its terms and that the ship owner must exercise due diligence when chartering his vessel which justifies keeping of the proceeds of the check when it cleared.

### Discussion

It would be well to clear the decks a little at the outset, particularly with regard to the issue of the applicability of maritime law to the issues before me.

I ruled at trial that Monte Carlo waived this issue by not reserving it in the PTS, and that the general rule applies that "a

---

[6] At the opening of the trial I announced without objection that the facts stated as agreed in the PTS were stipulated and would require no proof.

Q:\HILLMAN\Fish2.wpd                6

party's stipulations are binding on that party and may not be contradicted by him at trial," *Feliciano v. Rullan*, 303 F.3d 1(1st Cir. 2002).[7] Further, nowhere in its argument or briefing does it offer any proof that general maritime law differs from the general common law when it comes to the construction of contract provisions. Indeed, maritime contracts are generally construed in accordance with Uniform Commercial Code, the common law, or other statutory law.    *See, e.g, Princess Cruises, Inc. v. General Electric Co.*, 143 F.3d 828 (4th Cir.), *cert. denied* 525 U.S. 982 (1998).

Additionally, I need not dwell long on the discussion of the forum selection clause in the Agreement. Neither party argued that I lacked jurisdiction or that the case should be removed to the contractually selected forum.    Any argument by any party to that effect was certainly waived through inactivity.    The issue was not raised as required by Fed. R. Civ. P. 12(h)(1), made applicable here by Fed. R. Bank. P. 7012(b).    "The signing of a valid forum selection clause is a waiver of the right to defend against a motion to transfer to the selected forum on grounds of inconvenience to the defending party.    It does not mean, however, that the suit cannot be brought or heard in a forum other than the selected forum, if factors other than convenience of the parties so

---

[7]    *But cf. T.I. Federal Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir. 1995).

001965

justifies." *Ha-Lo Inds., Inc. v. Credit Suisse First Boston Corp.* (In re *Ha-Lo Inds. Inc.*), 2003 WL 21982145, *2 (N.D. Ill. 2003).

As to Monte Carlo's claim for other damages resulting from alleged breaches by Debtor, whether regarded as technical setoff or recoupment or as an assertion of its counterclaim, I find a complete absence of credible evidence to support it. Teitel presented not a single scrap of documentation — no invoices, no checks, no receipts — to support his vague assertions that various expenses were incurred.

I am left with the issue actually reserved by the parties in the PTS — the extent to which the $280,000 received by Monte Carlo must be paid over to the Trustee.

Monte Carlo insists that the Debtor was in default under the Agreement from the moment it sent the check, not a cashier's check, and not in the amount required to be paid by the Agreement. After this, it argues, all bets were off and Monte Carlo was in a recovery mode, entitled to reach out for any assets that came its way. I disagree.

It is obvious that the parties did not strictly comply with the payment terms of the Agreement, and that Monte Carlo had every right to insist on strict compliance but did not. Mr. Tietel did not call the Debtor and object to the payment of an ordinary check in a lesser amount; he deposited it. It is elementary law that a party to a contract may waive any condition in its favor, 17A

Q:\HILLMAN\Fish2.wpd                    8

001965      52206001969046

Am.Jur.2d *Contracts* §655, text at n.84 and cases cited, and that is exactly what Monte Carlo did.  Monte Carlo abandoned any claim of breach resulting from the check tender (and, logically, from the failure to provide the letter of credit as well).  It was only when the check appeared to have been dishonored that a default arose.

That default was cured when Teitel agreed to accept DiMento's wire transfer.  With the arrival of the wired funds, Monte Carlo had no claim of right to the proceeds of the check, nor did Teitel assert any such right.  According to his testimony, he did not even know that the check had cleared at that time.  Debtor (not yet such) could have recovered the funds then.

Time passed.  On or about June 22 another month's rent and insurance payment became due under the terms of the Agreement.  The issue then becomes whether Monte Carlo, in possession of funds to which it had no right on June 21, could apply those funds to sums becoming due thereafter under the doctrine of recoupment.

Recoupment permits the crediting of reciprocal rights against each other where those rights arose under the same transaction *Mohawk Inds. v. United States* (In re *Mohawk Inds.*), 82 B.R. 174, 176 (Bankr. D. Mass. 1987).   *See generally,* 20 Am.Jur.2d Counterclaim, Recoupment & Setoff §33. It is applicable here.[8]

---

[8]   Whether the applicable doctrine is recoupment or, because of the manner in which the check proceeds were retained, setoff, is an interesting academic issue but moot here, as the result would be the same under either theory.

001965

After payment of the second month's rent and insurance of $60,000 and 5% Florida taxes ($3,000) from the $126,000 proceeds of the check, Monte Carlo continued to hold $63,000 for the benefit of the soon-to-be Debtor.

Teitel testified, and the Agreement indicates, that various other sums might be due to Monte Carlo under the Agreement. DiMento alluded to some of them in his testimony as well. It is undisputed that no additional sums were ever paid. The only credits were drawn from the check proceeds as I have discussed here.

Time continued to pass. On or about July 22 another payment became due under the Agreement. Monte Carlo still held sufficient funds to make the rent-plus-insurance-plus-tax payment, exhausting the proceeds of the check. I hold that recoupment was appropriate as to those sums as well. Any other sums remained unpaid.

As to the additional amounts claimed to be due, I have the undisputed testimony of Teitel that there were such damages, but no evidence as to the amounts.[9] I do find, however, that a default did exist which justified the repossession.

This conclusion disposes of much of the issue before me. I hold that the check proceeds, although improperly retained in the

---

[9] If Monte Carlo had complied with the PTS and listed all of its proffered exhibits, it would have at least partially solved this problem, but it failed to do so and I declined to admit certain documents into evidence.

Q:\HILLMAN\Fish2.wpd                    10

first instance, were properly recouped against rentals thereafter accruing.   The second application of recoupment brings the basic rental current through August 21, or close thereto.

The remaining fund to be addressed is the last month's rent which had been paid as part of the wire transfer. The Agreement is quite specific that the security deposit (never paid) was distinct from the last month's rent which was only for that specific purpose.   The Midnight Gambler was repossessed on August 3, 2000 and Debtor filed its petition under Chapter 7 on August 11.   Had Monte Carlo demonstrated any damages in excess of the rent plus insurance and taxes, there might well be some theory which would allow them to recover some or all of those damages from the last month's rent, by recoupment or otherwise.   However, since I have held that Monte Carlo has not satisfied its burden of proving any damages in excess of the items specified above it cannot recover against that final amount.

As a result, inasmuch as Monte Carlo has satisfied itself as to rents and related amounts from the proceeds of the check, it has no cognizable claim to the funds remaining in its hands.

### Conclusion

Deducting the first month's payments of $63,000 from the $154,000 which was wire transferred, I conclude that the Trustee is

001965

entitled to recover $91,000 from Monte Carlo.[10]  Because Monte Carlo

failed to prove damages, I find for the Trustee on the

counterclaim.

Judgment will enter in accordance with this decision.

William C. Hillman
United States Bankruptcy Judge

Dated:   1/20/04

---

[10]   I appreciate that the amount of recovery awarded to the
Trustee exceeds that which he sought in his complaint.  Such a
result is not uncommon in proceedings in this court.  *See, e.g.*,
*Baker v. Friedman (In re Friedman)*, 298 B.R. 487, 505 (Bankr. D.
Mass. 2003).

Q:\HILLMAN\Fish2.wpd                                    12

Exhibit B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

_____
IN RE:                                          )        CHAPTER  7
Fisherman's Wharf Excursions, LLC               )        CASE NO. 00-15415-WCH
                          Debtor                )
_____)


_____
DONALD LASSMAN, Chapter 7 Trustee,              )
Fisherman's Wharf Excursions, LLC               )
                                                )        ADVERSARY PROCEEDING
                          Plaintiff             )        NO. 02-1015
v.                                              )
                                                )
Monte Carlo Cruise Concessions, Inc.            )
                                                )
                          Defendant             )
_____)


## TRUSTEE'S OPPOSITION TO DEFENDANT MONTE CARLO CRUISE CONCESSIONS INC.'S MOTION FOR RECONSIDERATION OF ORDER GRANTING PLAINTIFF'S REQUEST TO DISMISS APPEAL

Plaintiff Donald R. Lassman, Chapter 7 Trustee, Fisherman's Wharf Excursions, LLC, opposes the Motion of Monte Carlo Cruise Concessions, Inc. ("Monte Carlo") seeking reconsideration of this Court's allowance of Plaintiff's Request to Dismiss Appeal.

## FACTS

Monte Carlo's Motion arises out of its failure to comply with time requirements imposed by court rules.   On April 29, 2004, this Court allowed the Plaintiff's Request to Dismiss the Appeal.  Plaintiff's Request was based on Monte Carlo's failure to comply with the requirement of Fed. R. Bankr. Pro. 8006 that "within 10 days after filing the notice of appeal" an appellant file a designation of items to be included in the record on appeal as well as a statement of issues to be presented.  No designation of items to be included in the record and no statement of issues had been filed as required.  In addition, the filing fee required by Rule 8001 was not paid.

This was not the first example of Monte Carlo's failure to comply with time limits imposed by rule or order. The Court's Pretrial Order stated: "If a party wishes to file a trial memorandum, it must be filed with the PTS. No other briefs or memoranda will be allowed at trial, unless otherwise specifically ordered." The parties filed the PTS on October 15, 2003. Plaintiff filed a trial brief on that date. Without seeking leave, Monte Carlo filed its trial brief on the day of trial, October 29, 2003.

In addition, the Pretrial Order required the parties to identify their trial exhibits. Monte Carlo failed to do that. See the Court's Decision, dated January 20, 2004 at page 10, note 9: "If Monte Carlo had complied with the PTS and listed all of its proffered exhibits, it would have at least partially solved this problem [i.e. lack of evidence of amount of damages], but it failed to do so…."

After the judgment entered on January 20, 2004, Plaintiff filed a motion to amend the judgment. That motion was denied on March 8, 2004. That date triggered the 10 day period within which to file a notice of appeal. On April 1, 2004, Monte Carlo filed its Notice of Appeal, together with a Motion for Leave to File Notice of Appeal Late. The motion was allowed on April 12, 2004. In the filing letter dated April 1, 2004, Monte Carlo stated: "Please advise us of the appropriate filing fee." No fee was paid. An April 1, 2004, docket entry established April 12, 2004 as the date for appellant's designation. On April 12, 2004 the court sent a notice to counsel for Monte Carlo requiring that the filing fee be paid by April 22, 2004.

On April 29, 2004, because no designation of items to be included in the record and no statement of issues had been filed and no fee paid, Plaintiff sought dismissal of the appeal. Local Rule 203 of the United States District Court for the District of Massachusetts states: "The Bankruptcy Court is authorized and <u>directed</u> to dismiss an appeal…in which an appellant has failed to file a designation of the items for the record or a statement of the issues as required by Bankruptcy Rule 8006." (emphasis added).

On May 6, 2004, 8 days after the Request to Dismiss the Appeal was filed, Monte Carlo filed an opposition to the Request to Dismiss Appeal. The only grounds in support of the opposition was Monte Carlo's statement "that it has provided the filing fee…and has also now submitted its designation of items to be included in the record as well as a statement of issues…." <u>It did not seek leave to file the designations or filing fee late.</u>

On July 15, 2004, the Court granted the Request to Dismiss Appeal.

Rule 8006 also requires that "if the record designated by any party includes a transcript…the party shall, immediately after filing the designation, deliver to the reporter and file with the clerk a written request for the transcript…."  According to the docket as of August 3, 2004, no such request has been filed and no transcript has been filed.

Almost two weeks after the Court granted the Request to Dismiss Appeal, on July 28, 2004, Monte Carlo filed the instant motion for reconsideration.  As reasons, it states that there was no prejudice or undue delay nor was the judicial process unduly hindered.

**ARGUMENT**

1. **Monte Carlo has failed to provide a valid reason for the court to reconsider its order.**

United States District Court Local Rule 203[1] directs the bankruptcy court to dismiss the appeal for failure to file the required designations and provides that "Bankruptcy court orders entered under this subsection may be reviewed by the district court on motion filed within ten days of the entry of the order."

Failure to file the transcript provides independent grounds to support dismissal. See In Re Sandra Cotton, Inc., 91 B.R. 659, 660 (W.D. N.Y. 1988) (District court refused to vacate bankruptcy court's order of dismissal for failure to file the transcript).

Instead of moving to enlarge the time to file its designations and filing fee, Monte Carlo simply filed them late, after plaintiff sought dismissal.  Now, instead of seeking review by the district court as permitted by the Local Rule, Monte Carlo seeks reconsideration.  As this court has ruled in numerous cases, "[t]o succeed on a motion to reconsider, the Court requires that the moving party show newly discovered evidence or a manifest error of fact or law."  In Re Wedgestone Financial, 142 B.R. 7, 8 (D. Mass. 1992).  Failure to give a reason for noncompliance with the requirements of Rule 8006 is grounds for dismissal.  See In Re Frottier, 185 B.R. 928, 929 (S.D. Fla. 1995) (Failure "to cite any grounds for his failure to file the required designation of record and statement of the issues" resulted in denial of debtor's motion for reconsideration of dismissal of appeal).

---

[1] District Court Local Rule 203 is applicable in this Court.  See MLBR 9029-3.

See <u>In Re Bock Laundry Machine Co</u>., 63 B.R. 221, 222 (N.D. Ohio 1986):

> Upon a review of the record, the Court finds that dismissal is appropriate in this case. Pursuant to B.R. 8006, Meyers is required to "file with the clerk of the bankruptcy court and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issue to be presented . . . ." Meyers has failed to take this action within the requisite ten days after filing of the notice of appeal. Nor has Meyers moved for an extension of time in which to comply with the foregoing requirements. *See* B.R. 9006

Once the time to perform an act has expired, a court may exercise its discretion to allow an enlargement of time "on motion made after the expiration of the specified period the act to be done where the failure to act was the result of excusable neglect."  Rule 9006 (b) (1).  Monte Carlo has not even asserted excusable neglect as support for its failures to comply with the requirements of the Rules.

## 2.  <u>There was no excusable neglect</u>

Even if Monte Carlo had properly sought an enlargement of time by filing a motion, or if this Court were inclined to consider the request for reconsideration as a motion under Rule 9006, Monte Carlo cannot meet the excusable neglect standard in this Circuit:

> In making this determination of whether excusable neglect exists, the Court will consider all the relevant circumstances including: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Investment Services Co. v. Brunswick Associates Ltd.*, 507 U.S. 380, 395, 113 S. Ct. 1489, 1498, 123 L. Ed. 2d 74 (1993).

> The First Circuit has observed that "'the four Pioneer factors do not carry equal weight; the excuse given for the late filing must have the greatest import. While prejudice, length of delay, and good faith might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry . . . .'" *Graphic Communications International Union v. Quebecor Printing Providence*, 270 F.3d 1, 6 (1st Cir. 2001) (quoting *Hosp. del Maestro v. National Labor Relations Board*, 263 F.3d 173, 175 (1st Cir. 2001) (*per curiam*) (internal citations omitted)). This focus comports with the *Pioneer* Court's recognition that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer*, 507 U.S. at 392, 113 S. Ct. 1489.

Here, Appellant's counsel states that the delay resulted from his failure to calendar the ten-day deadline for filing the designation. Counsel's excuse for having failed to file a timely designation is not compelling. The First Circuit has repeatedly upheld findings of "no excusable neglect" where the court cited the absence of unique or extraordinary circumstances. *See Graphic Communications International Union*, 270 F.3d at 6; *Mirpuri v. ACT Manufacturing, Inc.*, 212 F.3d 624, 631 (1st Cir. 2000).

Envisonet Computer Services, Inc. v. ECS Funding LLC, 288 B.R. 163, 165-66 (D. Maine 2002).

Here, there was no reason given for the failure to comply with the Rule when Monte Carlo opposed the Request to Dismiss Appeal.  In its Motion to reconsider, Monte Carlo doesn't even address the reason for delay that is the most important factor in evaluation of excusable neglect.  See In Re Serra Builders, Inc., 970 F.2d 1309, 1311 (4th Cir. 1992) (Dismissal affirmed where appellant failed "to present the court with any compelling reasons for its delay in filing its designation" under Rule 8006; had been "negligent with regards to the entire procedural requirements of the bankruptcy appeals process;" and had "never filed a request for an extension before the time had passed for appellant to file its designation").

Moreover, Monte Carlo is wrong when it states that the Plaintiff has not suffered prejudice.  The judgment was final and appealable on March 8, 2004.  Nearly five months have passed since then.  The Trustee represents the interests of the creditors.  There are many creditors, including several with wage claims, whose claims cannot be addressed or paid until this case is over.  Any delay is significant and prejudicial to them.  Monte Carlo's failure to comply with the rules has resulted in a significant delay.  If this Court grants it relief as requested, the delay will continue.

Whether Monte Carlo was ignorant of the Rules or simply considered the Rules' mandated time requirements as mere suggestions is of no import.  "[I]nadvertence,  ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer*, 507 U.S. at 392, 113 S. Ct. 1489.

Exhibit B

**Conclusion**

      For the reasons stated herein, the Court should deny Monte Carlo's

Motion for Reconsideration.

Dated: August 4, 2004

<u>/s/ Stephen M. Sheehy</u>
Stephen M. Sheehy, Esq. BBO No. 457150
Attorney for Appellee/Cross-Appellant Donald R. Lassman, Chapter 7 Trustee,
Fisherman's Wharf Excursions, LLC
Stephen M. Sheehy, P.C.
460 Totten Pond Road, Suite 230
Waltham MA 02451
781-466-8999

**<u>Certificate of Service</u>**

I, Stephen M. Sheehy, certify that on August 4, 2004, I served a copy of this Opposition
to Motion for Reconsideration  by mailing a copy to the following:

Seth Holbrook
Holbrook & Murphy
150 Federal Street
Boston MA 02110

<u>/s/ Stephen M. Sheehy</u>
Stephen M. Sheehy

Exhibit C

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| Fisherman's Wharf Excursions, LLC ) | CASE NO. 00-15415-WCH |
| Debtor ) | |
| ) | |
| | |
| DONALD LASSMAN, Chapter 7 Trustee, ) | |
| Fisherman's Wharf Excursions, LLC ) | |
| ) | ADVERSARY PROCEEDING |
| Plaintiff ) | NO. 02-1015 |
| v. ) | |
| ) | |
| Monte Carlo Cruise Concessions, Inc. ) | |
| ) | |
| Defendant ) | |
| ) | |

## **Joint Pretrial Statement**

1.  Narrative statement of the controversy:

    a.  Plaintiff's position:

    The debtor, Fisherman's Wharf Excursions, LLC operated a gambling boat in the summer of 2000. The boat had been chartered from defendant Monte Carlo Cruise Concessions, Inc. ("Monte Carlo"). At the commencement of the charter, Monte Carlo received an initial payment of $126,000 representing the first and last month's charter fee ($60,000 per month) and applicable taxes (5% of the charter fee). A few days after receiving the $126,000 check, Monte Carlo also received a second payment of $154,000 for a total of $280,000. Monte Carlo retained the entire sum. There is no legitimate explanation for the retention of the extra deposit. Monte Carlo retained the extra funds without any contractual right to do so. Vincent DiMento, then the debtor's attorney, is expected to testify that he spoke to Dan Teitel, Monte Carlo's principal, who told him the $126,000 check was no good and that he demanded a wire transfer. DiMento is also expected to testify that the $154,000 wire transfer was sent only upon a representation by Teitel that the $126,000 check would be returned uncashed. In fact, Monte Carlo deposited the check and retained the entire $280,000.

The trustee's position is that Monte Carlo is entitled to retain the initial month's charter fee of $60,000. In the event it is able to prove it paid the required tax, it is entitled to an additional $3,000. The rest of the $280,000 is property of the estate and must be turned over to the Trustee.

      b. Defendant's position:

Defendant's position is set forth in the affidavit of Dan Teitel, a copy of which is attached to the List of Witnesses to be called by defendant.

2. The following facts are admitted and require no proof:

    a. The debtor, Fisherman's Wharf Excursions, LLC, filed a Chapter 7 petition on or about August 11, 2000. Donald R. Lassman is the duly appointed Chapter 7 Trustee ("Trustee").

    b. On or about May 15, 2000, the debtor entered into a "Bareboat Charter" agreement with defendant Monte Carlo Cruise Concessions, Inc. ("Monte Carlo") whereby the debtor chartered a vessel known as "Midnight Gambler" from Monte Carlo. A true copy of the agreement is Exhibit 1.

    c. At all times relevant to this matter, Dan Teitel was president of Monte Carlo.

    d. The Bareboat Charter agreement provided for a monthly rental of $60,000 plus applicable taxes and $10,000 per month for insurance. Such charges were to commence upon delivery of the vessel to debtor.

    e. Pursuant to the charter agreement, on or about May 15, 2000, the debtor provided a check to Monte Carlo in the amount of $126,000, representing a deposit for first and last months' charter fees and taxes.

    f. On or about May 19, 2000 the sum of $154,000 was wire transferred from the debtor to Monte Carlo.

    g. The check for $126,000 was deposited by Monte Carlo into its bank account.

    h. As a result, Monte Carlo actually received the sum of $280,000 from debtor at or before the commencement of the charter, i.e. the check for $126,000 and the wire transfer of $154,000.

    i. On August 3, 2000 the vessel was repossessed by Monte Carlo.

    j. Monte Carlo has filed no proof of claim in this case.

3.  The following issues of fact, and no others, remain to be litigated:

    a.  Whether Dan Teitel represented to DiMento that the $126,000 check would be returned to the debtor uncashed upon receipt of the $154,000 wire transfer?

    b.  How much of the $280,000 received by Monte Carlo represents property of the estate?

4.  The following issues of law, and no others, remain to be litigated:

    a.  Whether money received by Monte Carlo in excess of the first month's charter fee constitutes property of the estate, to be turned over to the trustee.

5.  Attached is a list of exhibits to be offered at trial.

6.  The parties have exchanged a list of witnesses to be called at trial:

    a.  Plaintiff: Vincent DiMento

    b.  Defendant: Dan Teitel

7.  Other matters that might affect the trial: None.

8.  All discovery desired to be conducted has been completed.

9.  The parties are ready for trial.

10. The trial is now expected to take approximately 4 hours, as opposed to the 3 hours originally estimated.

11. The foregoing admissions have been made by the parties, and the parties have specified the foregoing issues of fact and law remaining to be litigated. Therefore, this PTS shall supercede the pleadings and govern the course of the trial of this cause.

Donald R. Lassman, Chapter 7 Trustee
By his attorney

Stephen M. Sheehy
Stephen M. Sheehy, P.C.
BBO No. 457150
460 Totten Pond Road, Suite 230
Waltham MA 02451
781-466-8999
781-466-8788 (fax)

Monte Carlo Cruise Concessions, Inc.
By its attorney

Seth Holbrook
Holbrook & Murphy
BBO No.
150 Federal Street
Boston MA 02110
617-428-1151
617-443-1696 (fax)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| Fisherman's Wharf Excursions, LLC | ) | CASE NO. 00-15415-WCH |
| Debtor | ) | |
| | ) | |

| | | |
|---|---|---|
| DONALD LASSMAN, Chapter 7 Trustee, | ) | |
| Fisherman's Wharf Excursions, LLC | ) | |
| | ) | ADVERSARY PROCEEDING |
| Plaintiff | ) | NO. 02-1015 |
| v. | ) | |
| | ) | |
| Monte Carlo Cruise Concessions, Inc. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

### Proposed Trial Exhibits

The parties agree that the following exhibit may be introduced into evidence at trial:

1. Bareboat Charter agreement dated May 15, 2000.

Plaintiff intends to offer:

2. Letter dated July 20, 2000 from Vincent DiMento to Dan Teitel. Defendant objects because it asserts the letter is inadmissible hearsay.

Defendant intends to offer:

3. Banking records regarding insufficient funds. Plaintiff objects because: the records are inadmissible hearsay; the records have not previously been produced; the designation is not specific enough to identify the document(s) and thus does not comply with the Pretrial Order ¶ 4.5

4. Records concerning seizure of vessel by Pilots. Plaintiff objects because: the records are inadmissible hearsay; the records have not previously been produced; no proof of claim or assertion of a right to setoff was filed by Monte Carlo and thus the records are not relevant; the designation is not specific enough to identify the document(s) and thus does not comply with the Pretrial Order ¶ 4.5.

5. Records concerning repairs that needed to be made to the vessel. Plaintiff objects because: the records are inadmissible hearsay; the records have not previously

been produced; no proof of claim or assertion of a right to setoff was filed by Monte Carlo and thus the records are not relevant the designation is not specific enough to identify the document(s) and thus does not comply with the Pretrial Order ¶ 4.5.

6. Initial check sent by Fisherman's Wharf.

7. Wire transfer records. Plaintiff objects because: the records are inadmissible hearsay; the records have not previously been produced; the designation is not specific enough to identify the document(s) and thus does not comply with the Pretrial Order ¶ 4.5.

8. Records concerning payments to other vendors of Fisherman's Wharf. Plaintiff objects because: the records are inadmissible hearsay; the records have not previously been produced; no proof of claim or assertion of a right to setoff was filed by Monte Carlo and thus the records are not relevant; the designation is not specific enough to identify the document(s) and thus does not comply with the Pretrial Order ¶ 4.5.

9. Records relating to costs of repossessing the vessel. Plaintiff objects because: the records are inadmissible hearsay; the records have not previously been produced; no proof of claim or assertion of a right to setoff was filed by Monte Carlo and thus the records are not relevant; the designation is not specific enough to identify the document(s) and thus does not comply with the Pretrial Order ¶ 4.5.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| Fisherman's Wharf Excursions, LLC ) | CASE NO. 00-15415-WCH |
| Debtor ) | |
| _____ ) | |
| | |
| _____ | |
| DONALD LASSMAN, Chapter 7 Trustee, ) | |
| Fisherman's Wharf Excursions, LLC ) | |
| ) | ADVERSARY PROCEEDING |
| Plaintiff ) | NO. 02-1015 |
| v. ) | |
| ) | |
| Monte Carlo Cruise Concessions, Inc. ) | |
| ) | |
| Defendant ) | |
| _____ ) | |

## List of Witnesses to be Called by Plaintiff

Vincent DiMento, 97 Partridge Drive, Westwood, Mass. 02090. Mr. DiMento, then the
debtor's attorney, is expected to testify that prior to delivery of the vessel, he spoke to
Dan Teitel, Monte Carlo's principal, who told him the $126,000 check received by Monte
Carlo was no good and that Teitel demanded a wire transfer. DiMento is also expected to
testify he arranged for a wire transfer of $154,000 to Monte Carlo and that the $154,000
wire transfer was sent only upon a representation by Teitel that the $126,000 check
would be returned uncashed.   He is expected to testify that on or about July 20, 2000 he
sent a letter dated July 20, 2000 to Dan Teitel (plaintiff's proposed Exhibit 2).

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| Fisherman's Wharf Excursions, LLC | ) | CASE NO. 00-15415-WCH |
| Debtor | ) | |
| | ) | |

| | | |
|---|---|---|
| DONALD LASSMAN, Chapter 7 Trustee, | ) | |
| Fisherman's Wharf Excursions, LLC | ) | |
| | ) | ADVERSARY PROCEEDING |
| Plaintiff | ) | NO. 02-1015 |
| v. | ) | |
| | ) | |
| Monte Carlo Cruise Concessions, Inc. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## List of Witnesses to be Called by Defendant

Dan Teitel, Boca Raton Florida.

Mr. Teitel is expected to testify in accordance with his affidavit, a copy of which is attached hereto.

OCT-14-2003 TUE 03:33 PM CONNARTON WOOD CALLAHAN    FAX NO. 16174431696

06/09/2003  15:43    15619942409                    CREATIVE GAMING                    PAGE  01

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

IN RE:                                      )          CHAPTER 7
Fisherman's Wharf Excursions, LLC           )          CASE NO. 00-15415-WCH
                               debtor )
                                            )
_____)
                                            )
DONALD LASSMAN, Chapter 7 Trustee,          )
Fisherman's Wharf Excursions, LLC           )
                               Plaintiff    )
v.                                          )          Adv. Pro. No. 02-1015
Monte Carlo Cruise Concessions, Inc.        )
                               Defendant    )
_____)

### AFFIDAVIT OF DAN TEITEL IN SUPPORT OF DEFENDANT MONTE CARLO CRUISE'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

NOW COMES Dan Teitel who deposes and sayeth the following:

1.    My name is Dan Teitel. I am the principal of Monte Carlo Cruise Concessions, Inc. (hereinafter "Monte Carlo"). I have personal knowledge of the matters in this affidavit.

2.    On behalf of Monte Carlo I entered into negotiations with individuals doing business as Fisherman's Wharf Excursions, LLC for the charter of the M/V MIDNIGHT GAMBLER. I negotiated the terms and conditions of the charter party which is appended to the Plaintiff's Memorandum in Support of Fisherman's Wharf's Motion for Summary Judgment.

3.    The parties agreed that Fisherman's Wharf would pay the initial One Hundred Forty Thousand Dollars ($140,000) in cash or by cashier's check. See paragraph 2 of the charter. However, Fisherman's Wharf sent an ordinary check from an unknown company drawn on a new account. When we called their bank, their bank said the funds were not in the account. We

proceeded to deposit the check, because of the concern that this caused. We did not say we were sending back the check or that it would be uncashed.

4..    We also informed Fisherman's Wharf that we would not charter the vessel to them until they complied with the certified funds clause. They proceeded with a wire transfer and at the same time the original check actually ended up clearing. In the time that they had the vessel, Fisherman's Wharf never asked for a refund and the funds were applied as prepayment for the monthly hire. By submitting a check that was based on insufficient funds, Fisherman's Wharf was actually in default pursuant to paragraph 5.

5.    Fisherman's Wharf abandoned the vessel in poor condition and owing monies to various vendors, including the Pilots' servicing Provincetown. The Provincetown Pilots had the vessel arrested in New York and the Pilots' fees were satisfied by my company in order to release the vessel from the court arrest. My company also incurred costs in repossessing the vessel, repairing the vessel to return it to the condition it was in before the charter, and monies paid to other entities from whom Fisherman's Wharf incurred services but did not pay. These monies had to be paid to the Provincetown suppliers or there would be maritime liens on the vessel.

6.    I did not receive any notice of the filing of bankruptcy by Fisherman's Wharf until I received the Complaint in this adversary proceeding. My company has incurred extensive attorney's fees not only in enforcing the terms of the charter, but also in seeking to have the vessel freed from the arrest by the Pilots, and in defending this action.


Signed under the pains and penalties of perjury this   9 th  day of June, 2003.

Dan Teitel