```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS


MONTE CARLO CRUISE                )
CONCESSIONS, INC.,                )
        Appellant,                )    CIVIL ACTION NO.
                                  )    04-12215-DPW
        v.                        )
                                  )
DONALD LASSMAN, TRUSTEE,          )
        Appellee.                 )
```

MEMORANDUM AND ORDER
February 8, 2005

There are two questions presented requiring extended discussion on this appeal from a decision by the bankruptcy court: (1) whether the dismissed appeal of appellant Monte Carlo Cruise Concessions, Inc. ("Monte Carlo") should be reinstated, and (2) whether the bankruptcy court erred in its damage award, most particularly when it denied the request for prejudgment interest of appellee Donald Lassman ("the Trustee").

While I conclude that the Monte Carlo appeal should not be reinstated, I conclude on the cross appeal of the Trustee that the bankruptcy court erred in denying prejudgment interest on the damage award it properly entered. I will remand the case for entry of a judgment including prejudgment interest.

**BACKGROUND**

The judgment before me arose out of bankruptcy proceedings related to a "Bareboat Charter" agreement that Fisherman's Wharf Excursions, LLC ("Debtor") and Monte Carlo entered into on or

about May 15, 2000.[1]  I accept the facts as found by the bankruptcy court supplemented by facts of record not in dispute.

Pursuant to the agreement, Debtor chartered a vessel -- the "Midnight Gambler" -- from Monte Carlo.  The rental rate was $60,000 per month; in addition, the Debtor was responsible for applicable taxes and $10,000 each month for insurance.  Payment was to be made by cash or cashier's check.  At the inception of the rental term, the Debtor was obligated to pay $140,000 plus taxes, representing the first and last month's rent and insurance.  There was also a provision that a $60,000 letter of credit be posted with Monte Carlo's attorneys, which would be replaced by cash on or before July 15, 2000.

Notwithstanding these provisions, the Debtor paid Monte Carlo via a normal bank check $126,000 on or about May 15, 2000.  The Debtor never provided the letter of credit nor cash to satisfy the security provision.  The parties, however, stipulated at trial that the payment was made "pursuant to the charter agreement" and served as "a deposit for first and last months' charter fees and taxes."

According to Monte Carlo's president, Dan Teitel, when he learned that the check was drawn against insufficient funds, he inquired of a representative of the Debtor as to the payment.

---

[1] Bankruptcy courts findings of fact are reviewed for clear error while its conclusions of law are subject to de novo review. See In re Watman, 301 F.3d 3, 7 (1st Cir. 2002).

The representative wired $154,000 to Monte Carlo on May 19, 2000. On that same day, the original bank check cleared. None of the funds was returned to the Debtor.

On May 22, 2000, possession of the Midnight Gambler was delivered. The bankruptcy court found that this started "the running of the monthly payment clock." A representative of the Debtor faxed a letter to Mr. Teitel on July 20, 2000 accusing Monte Carlo of "fraud" for retaining funds from the cleared check. No more payments were made to Monte Carlo. On August 3, the vessel was repossessed, and eight days later the Debtor filed its Chapter 7 petition.

Donald Lassman, as the Chapter 7 Trustee for the Debtor, filed a complaint against Monte Carlo on January 23, 2002 in the Bankruptcy Court in the District of Massachusetts. Monte Carlo counterclaimed for damages caused by the alleged breach of the charter agreement by the Debtor. After a October 29, 2003 trial before the bankruptcy judge, judgment in the amount of $91,000 entered for the Trustee on January 20, 2004. The court held "that the check proceeds, although improperly retained in the first instance, were properly recouped against rentals thereafter accruing." The court also found for the Trustee on Monte Carlo's counterclaim, "[b]ecause Monte Carlo failed to prove damages."

On January 29, 2004, the Trustee filed a motion to amend the judgment to include prejudgment interest. The court denied that motion on March 8, 2004 stating: "In view of the amount of the award, I decline to exercise my discretion to award interest." The Trustee now seeks reversal of that decision.

When the bankruptcy court denied the Trustee's request to amend the judgment on March 8, 2004, the 10-day period within which parties could file a notice of appeal started. Monte Carlo did not file its notice of appeal until April 1, 2004, simultaneously submitting a motion for leave to file the notice of appeal late, but not submitting the filing fee. On April 7, 2004, the Trustee filed a cross-appeal. The motion to file the notice of appeal late was allowed by the court, which set April 12, 2004 as the deadline to submit a designation of items to be included in the record and a statement of issues. Apparently, the bankruptcy court also sent notice to Monte Carlo setting April 22 as the deadline to pay the filing fee, (see Request to Dismiss the Appeal ¶ 4).

As of April 29, 2004, Monte Carlo had not filed its designation nor paid the filing fee. Consequently, the Trustee sought dismissal of the appeal. Monte Carlo filed an opposition to the Trustee's motion on May 6, 2004, along with its designation and filing fee. A week later, the Trustee filed its statement of issues on cross-appeal.

On July 15, 2004, the bankruptcy court granted the Trustee's

request to dismiss Monte Carlo's notice of appeal.  Monte Carlo moved the court to reconsider that dismissal on July 28, 2004. The court denied Monte Carlo's motion on August 25, 2004.

1.

The Trustee sought dismissal of Monte Carlo's notice of appeal for failure to comply with Bankruptcy Rule 8006, which provides in pertinent part:

> Within 10 days after filing the notice of appeal as provided by Rule 8001(a), entry of an order granting leave to appeal, or entry of an order disposing of the last timely motion outstanding of a type specified in Rule 8002(b), whichever is later, the appellant shall file with the clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented.

Fed. R. Bankr. P. 8006.  Local Rule 203 of this Court makes clear that "[t]he bankruptcy court is authorized and directed to dismiss . . . an appeal in which the appellant has failed to file a designation of the items for the record or statement of the issues as required by Bankruptcy Rule 8006."  D. Mass. L.R. 203. The bankruptcy court dismissed Monte Carlo's notice of appeal pursuant to that authorization.  This court reviews such a decision for abuse of discretion.[2]  See In re Tampa Chain Co., 835 F.2d 54, 55 (2d Cir. 1987).

In reviewing the bankruptcy court's decision for abuse of

---

[2]This court's authority to review on appeal decisions of the bankruptcy court derives from Fed. R. Bankr. P. 8013.

discretion, I will look to the discretionary standards applied by district courts acting in their appellate function in deciding whether to dismiss a bankruptcy appeal. The starting point is Bankruptcy Rule 8001(a), which provides in pertinent part that "[a]n appellant's failure to take any step other than timely filing a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court or bankruptcy appellate panel deems appropriate, which may include dismissal of the appeal." Fed. R. Bankr. P. 8001(a).

Various courts have offered guidance on how to effectuate the purpose of Rule 8001(a) when deciding whether to dismiss an appeal for noncompliance with Rule 8006.

The Fourth Circuit asks its district courts to "take at least one of the following steps: (1) make a finding of bad faith or negligence; (2) give the appellant notice and an opportunity to explain the delay; (3) consider whether the delay had any possible prejudicial effect on the other parties; or (4) indicate that it considered the impact of the sanction and available alternatives." In re Serra Builders, Inc., 970 F.2d 1309, 1311 (4th Cir. 1992).

The Fifth Circuit "has identified several considerations for evaluation of the dismissal: (1) the harmlessness of some infractions of bankruptcy procedural rules; (2) the effects on clients from the dismissal of an appeal because of an attorney's

mistake; and (3) the promotion of swift and efficient resolution of bankruptcy disputes." In re Advance Cellular Systems, Inc., 262 B.R. 10, 15 (D.P.R. 2001) (citing In re CPDC, Inc., 221 F.3d 693, 699-700 (5th Cir. 2000)).

The Advance Cellular court, after reviewing similar considerations taken into account by the Seventh and Ninth Circuits, concluded that a

> district court applying Rule 8001(a) for violations of 8006 should consider: (1) whether the appellant was negligent or acted in bad faith; (2) what prejudice, if any, the other interested parties of the bankruptcy proceeding as well as the proceedings themselves incurred as a result of the appellant's failure to perfect the appeal; (3) the strength of the appellant's explanation for the delay; and (4) the appropriateness of a sanction as measured by the objectives of the relevant Federal Rules of Bankruptcy Procedure.

Advance Cellular, 262 B.R. at 15 (adding that "[a]s a general matter . . . a district court need not weigh the impact to a client of a sanction imposed in response to the act or omission of the client's attorney").

In the absence of definitive direction from the First Circuit, I take the considerations cited by these other courts as guideposts and find, on the present record, that the bankruptcy judge did not abuse its discretion in dismissing the appeal. The court provided Monte Carlo with notice of its failure to designate issues and to file the requisite fee within a prescribed period. Monte Carlo does not claim to have sought

leave to file its designations or filing fee late; rather it simply filed them belatedly in response to the Trustee's motion to dismiss the appeal.  Monte Carlo has provided no explanation for its dilatory conduct, conduct the Trustee notes was exhibited previously in the bankruptcy action in regard to time limits and orders of the court.

An additional factor weighing against reinstatement of the appeal is that Monte Carlo contends only in conclusory fashion that there has been no prejudice to the Trustee.  The Trustee counters that the proceeding has been prejudiced by the delay, because interested parties await a final ruling.  See Advance Cellular, 262 B.R. at 14 (explaining that the time period in the Bankruptcy Rules are short because "the court has an obligation to protect the interests of the potentially many[] interested parties by distributing as quickly as possible what often are economically fragile assets").  Without a clear, non-conclusory demonstration from Monte Carlo to the contrary, I find there were sufficient grounds to dismiss the appeal and certainly no abuse of discretion in doing so.

Moreover, Monte Carlo apparently did not comply with an additional requirement of Rule 8006, which states that "[i]f the record designated by any party includes a transcript of any proceeding or a part thereof, the party shall, immediately after filing the designation, deliver to the reporter and file with the

-8-

clerk a written request for the transcript . . . ." The Trustee contends Monte Carlo has not done so, and Monte Carlo does not contest that claim.

Arguably, any one of these facts would suffice to dismiss the appeal. Taken together, they are more than enough. I recognize that dismissal is a "harsh and drastic sanction", Advance Cellular, 262 B.R. at 15, but find that the bankruptcy judge did not abuse its discretion in light of the opportunity provided to Monte Carlo to remedy its delay and Monte Carlo's continued failure to provide an explanation for its failure to do so.

## 2.

### A. Merits

If I were to reach the merits of Monte Carlo's appeal, I would likely find its contentions unpersuasive.[3] For its part on

---

[3] I note Monte Carlo's substantive arguments turn on the bankruptcy court's failure to apply maritime law. I find any such error, which is not clear from the record, was harmless. The bankruptcy judge touched upon the question in his decision, stating not only that "Monte Carlo waived this issue by not reserving it in the PTS", but also that
> nowhere in its argument or briefing does it offer any proof that general maritime law differs from the general common law when it comes to the construction of contract provisions. Indeed, maritime contracts are generally construed in accordance with the Uniform Commercial Code, the common law, or other statutory law.

Bankr. Ct. Decision, at 6-7 (citing Princess Cruises, Inc. v. General Electric Co., 143 F.3d 828 (4th Cir. 1998), cert denied 525 U.S. 982 (1998)). On appeal, Monte Carlo claims there were

cross-appeal, the Trustee raises merits arguments as well, contending that the bankruptcy court incorrectly applied the principles of setoff and recoupment in calculating the judgment. There is no need to resolve whether setoff is the appropriate mechanism in this instance; recoupment suffices.  "[I]n practice, the differences between recoupment and setoff are often subtle and difficult to maintain.  Nevertheless, the relevant distinctions are important because, as a general rule, the requirements and limitations of section 553 do not apply to recoupment."  4 Collier on Bankruptcy § 553.10 (15th ed. 2004) (citing 11 U.S.C. § 553).

"[R]ecoupment is in the nature of a right to reduce the amount of a claim, and does not involve establishing the existence of independent obligations."  Id.; see In re Holyoke Nursing Home, Inc., 273 B.R. 305, 311 (D. Mass. 2002).  It is an equitable remedy, available when a court determines that "both debts arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations."  In re Women's

---

arguments before the bankruptcy court regarding distinctions between maritime law and the common law of contracts.  I find those arguments, however, actually focused on the court's failure to properly implement what Monte Carlo contends are the clear provisions of the charter agreement.  No meaningful distinction between maritime and common law was developed.  Monte Carlo does not make clear how the applicable law would have altered the decision, but rather simply highlights its disagreement over the result.

Technical Institute, Inc., 200 B.R. 77, 81 (D. Mass. 1996). Although the Trustee takes issue with the bankruptcy court's weighing of the equities here, I cannot find the judgment to be in error.

The Trustee further contends there is no mutuality here, but that "is not required", 4 Collier § 553.10, for recoupment to apply. Moreover, with respect to concerns about giving Monte Carlo unwarranted preference over other creditors, recoupment is a method applied to define the amount of a single debt, not to determine the superiority of discrete obligations. "In proper form, the right of recoupment is a defensive right that assists in the just and proper determination of the defendant's liability." Id.

The Trustee also objects to the bankruptcy judge's reducing the amount owed by Monte Carlo by three full months rent, claiming it should only be reduced -- if at all -- for the time the vessel was actually in the Debtor's possession. In the Trustee's estimation, that would be from the date of delivery, May 22, until the vessel was repossessed on August 3, a period of 2.4 months. On the record before me, given the obvious transaction costs, I cannot find that it was clearly erroneous or inequitable to permit recoupment for the entire third month's rent.

The Trustee argues that it should also receive (in addition

to the wrongfully retained personal check) the total balance remaining from the $154,000 wire after the first month's rent is taken out. The right to those funds, argues the Trustee, derives from whether the deposit was a security deposit. Contending that it was not, the Trustee cites cases that define such funds as property of the estate and subject to turnover. Without determining the nature of the deposit -- and noting that it is not as clear as the Trustee would have it that the funds did not serve as security -- there is no basis offered by the Trustee, apart from his contentions regarding the equities, to find that recoupment is inapplicable to such funds.

As a flexible, if limited, equitable remedy, recoupment is available to bankruptcy courts in coming to just resolutions. I understand that the Trustee believes the resolution here to be unfair considering Monte Carlo's wrongful retention of funds. Recognizing that alternative resolutions may have been acceptable, I find the bankruptcy court's decision to be, at a minimum, a reasonable approach to resolving the conflicting obligations as that court determined them at trial.

### B. Prejudgment Interest

Whether to award prejudgment interest in a bankruptcy action lies within the discretion of the bankruptcy judge. See Phoenix American Life Ins. Co. v. Devan, 308 B.R. 237, 242 (D. Md. 2004); In re Roti, 271 B.R. 281, 292 (N.D. Ill. 2002); In re Neponset

River Paper Co., 219 B.R. 918, 919 (D. Mass. 1998). Consequently, I review the bankruptcy judge's decision not to award prejudgment interest for abuse of discretion. See, e.g., In re Chattanooga Wholesale Antiques, Inc., 930 F.2d 458, 465 (6th Cir. 1991) ("The bankruptcy court did not abuse or exceed its discretion in allowing prejudgment interest."); see also Southwest Recreational Indus. v. Fieldturf, Inc., 2002 WL 32783971, at *9 (5th Cir. 2002).

I must determine whether "the denial was either so unfair or so inequitable as to require [me] to upset it," Blau v. Lehman, 368 U.S. 403, 414 (1939). The bankruptcy court, as trial court, "has wide latitude in determining the appropriate remedy and there is no abuse of discretion when its award makes the plaintiff whole and is sufficient to deter the defendant from future wrongdoing." Estate of Ungar v. Palestinian Auth., 304 F. Supp. 2d 232, 237 (D.R.I. 2004). In sum, the purpose of prejudgment interest "is not punitive but compensatory: to make the estate whole." Neponset River, 219 B.R. at 919; see also U.S. Industries, Inc. v. Touche Ross & Co., 854 F.2d 1223, 1256 (10th Cir. 1988) ("Under federal law, the rationale underlying an award of prejudgment interest is to compensate the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of judgment."), implied overruling on other grounds recognized by Anixter v. Home-Stake

-13-

Prod. Co., 77 F.3d 1215, 1231 (10th Cir. 1996).

Although the discretion applied in denying the award of prejudgment interest turns on equitable considerations, "it must be exercised according to the law."  In re Matter of Milwaukee Cheese, Wisconsin, Inc., 112 F.3d 845, 849 (7th Cir. 1997). Prejudgment interest "should be awarded unless there is a sound reason not to do so."  Id.; see Phoenix American, 308 B.R. at 242; Roti, 271 B.R. at 292-93; see also U.S. Industries, 854 F.2d at 1256 (noting that "prejudgment interest is ordinarily awarded, absent some justification for withholding it").  The general rule, as applied in the First Circuit, was stated in Robinson v. Watts Detective Agency, Inc., 685 F.2d 729, 741 (1st Cir. 1982):

> [A] prevailing plaintiff is entitled to prejudgment interest as an element of damages when the amount of his claim is either "liquidated" or "reasonably ascertainable by reference to established market values."  It has been said that the court's prejudgment interest inquiry is reduceable to "whether the demand is of such a nature that its exact pecuniary amount was either ascertained, or ascertainable by simply computation, or by reference to generally recognized standards such as market price."

Id. at 741 (citations omitted).

Given the discretion afforded to judges, the Tenth Circuit has held that "even where an award of prejudgment interest would serve to compensate the injured party, it is not recoverable as a matter of right", U.S. Industries, 854 F.2d at 1256, and can be denied in the interest of fairness.  Nevertheless, the

application of Robinson by courts in the First Circuit suggests a strong presumption that -- in the absence of equitable considerations warranting its denial -- prejudgment interest will be awarded when the amount of judgment is ascertainable.  See, e.g., U.S. ex rel. Metric Elec., Inc. v. Enviroserve, Inc., 301 F. Supp. 2d 56, 75 (D. Mass. 2003) ("Here the value of Metric's claim was reasonably ascertainable prior to trial.  Accordingly, Metric is entitled to prejudgment interest under federal law."); Donovan v. Freeway Construct Co., 551 F. Supp. 869, 881 (D.R.I. 1982) (Selya, J.).  Cf. Neponset River, 219 B.R. at 920 ("The rule to be drawn from Robinson is that a prevailing plaintiff on a claim whose amount was neither liquidated nor reasonably ascertainable before trial is entitled to prejudgment interest not as a matter of right but only in the discretion of the jury -- or of the judge, as the case may be.").

   Here, the bankruptcy judge merely stated the following:  "In light of the amount of the award, I decline to exercise my discretion to award interest."  Although a bankruptcy court's failure to explain the basis of its denial extensively may not itself be sufficient to demonstrate an abuse of discretion, see, e.g., Coxson v. Commonwealth Mortgage Co. of Am., 43 F.3d 189, 192-93, (5th Cir. 1995), the terse explanation here is not adequate.  There is no de minimis limitation in respect of prejudgment interest.

More fundamentally, this case does not implicate concerns regarding the unacertainable nature of the judgment amount. See, e.g., Southwest Recreational, 2002 WL 32783971, at *9 (where appellee's "submission . . . made it impossible for the court to determine which portion of the award was attributable to it breach of contract claims" and "[b]ecause [it] is seeking prejudgment interest only on its breach of contract claim", the court found that "[t]he denial of prejudgment interest . . . did not constitute an abuse of discretion"); Robinson, 685 F.3d at 742 (concluding that "trustee was not entitled to prejudgment interest except in the discretion of the jury" in a case where the "evidence as to the value of the transferred property ranged from one million dollars to the $680,000 figure . . .").

Nor do there appear to be equitable factors that might warrant a denial of prejudgment interest, where, as here, the bankruptcy court found that Monte Carlo wrongfully retained money.[4]  See generally, Blau, 368 U.S. at 414 (noting that

---

[4]The court found that
> [w]ith the arrival of the wired funds, Monte Carlo had no claim of right to the proceeds of the check, nor did [the representative of Monte Carlo] assert any such right. . . . Debtor (not yet such) could have recovered the funds then.

The bankruptcy court rejected Monte Carlo's contention that the debtor breached its payment agreement, because Monte Carlo waived the payment provisions upon acceptance of the alternative mode of payment (i.e., the first personal check). The court further found "[a]s to Monte Carlo's claim for other damages resulting from the alleged breaches by Debtor, whether regarded as technical setoff or recoupment or as an assertion of a

prejudgment interest "is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness" and "is denied when its exaction would be inequitable").

Prejudgment interest is necessary to compensate the prevailing party here fully, and I can find no equitable reason in the record before me for denying prejudgment interest in this case.[5]

The record disclosing no basis for denial of prejudgment interest, the bankruptcy court will be directed to apply what it deems to be a reasonable interest rate to compensate the appellee fully for the time during which Monte Carlo retained funds that were not rightfully in its possession.  In this connection, I observe that the court may apply 28 U.S.C. § 1961(a), see, e.g., Neponset River, 219 B.R. at 921, but it may look elsewhere for a rate it deems appropriate.

## CONCLUSION

For the reasons stated above:

---

counterclaim, . . . a complete absence of credible evidence to support it."

[5]Monte Carlo has not provided any reasons to deny prejudgment interest beyond stating that the award of prejudgment interest is left in the discretion of the bankruptcy court.  This is both true and not dispositive.  That discretion must be informed by the rationale behind the award of prejudgment interest under federal law.

-17-

    (a) the appellant's request to reinstate its appeal is DENIED;

    (b) the basic damage award is AFFIRMED on the merits; and

    (c) the bankruptcy court's denial of prejudgment interest to the appellant is REVERSED, and it is

    FURTHER ORDERED that the case be remanded to the bankruptcy court for entry of a revised judgment incorporating prejudgment interest consistent with this opinion.

                                       /s/ Douglas P. Woodlock

                                       _____
                                       DOUGLAS P. WOODLOCK
                                       UNITED STATES DISTRICT JUDGE